# EXHIBIT A

**Honda Leadership Leasing®**

Lease Date: 03/22/2018

# CLOSED-END VEHICLE LEASE AGREEMENT

Honda Financial Services

| LESSEE(S) (Print Name & Address) | VEHICLE GARAGING ADDRESS (If different) | LESSOR (Dealer) |
|---|---|---|
| Name of Lessee: ANDREW YURIEVICH PALTARAK | Name of Driver: N/A | Name of Lessor: HONDA MALL OF GEORGIA |
| Street Address: | Street Address: N/A | Street Address: 3699 GEORGIA HIGHWAY 20 |
| City: DULUTH State: GA | City: N/A State: N/A | City: BUFORD State: GA |
| Zip: County: | Zip: N/A County: N/A | Zip: 30519 |
| Name of Co-Lessee: N/A | Driver Phone Number: | Dealer Number: 208376 |

By signing this Lease, Lessee and each Co-Lessee (collectively, "I", "my", "me") individually and together agree to lease the Vehicle, described below, according to the terms on both sides of this Lease and Lessee and each Co-Lessee are jointly and severally liable for all obligations under this Lease. I accept delivery of the Vehicle and acknowledge that it is in good operating order and has the odometer reading recorded below. "Lessor" refers to the Lessor ("Dealer") named above and Assignee. Assignee is Honda Lease Trust, the assignee for all Honda and Acura leases. American Honda Finance Corporation ("AHFC") serves as the administrator of the Lease on behalf of Honda Lease Trust. American Honda Finance Corporation is doing business as Honda Financial Services ("HFS"). **LEASE TERM:** 39 **MONTHS**

## VEHICLE DESCRIPTION

| New/Used | Year | Make & Model | Body Style | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| NEW | 2018 | HONDA CR-V | 4DR SUV EX 2WD | 5J6RW1H55JL006432 | 71 |

Primary use of Vehicle is for Personal, Family, or Household purposes unless the following box is checked: ☐ Business, Commercial, Agricultural, or Lessee is an organization or governmental entity.

## TRADE-IN VEHICLE AND ITS ALLOWANCE

Year 2016 Make HONDA Model ODYSSEY Gross Amount of Trade-In Allowance $ 23102.00

Prior Contract or Lease Balance - $ 23102.00 **Net Trade-In Allowance = $ 0 (If less than zero, enter zero).

## FEDERAL CONSUMER LEASING ACT DISCLOSURES

| 1. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized Below)* | 2. MONTHLY PAYMENTS | 3. OTHER CHARGES (not part of my Monthly Payment) | 4. TOTAL OF PAYMENTS (The amount I will have paid by the end of the Lease.) |
|---|---|---|---|
| $ 2000.00 | My first Monthly Payment of $ 414.90 is due on 03/22/2018, followed by 38 payments of $ 414.90 due on the 22nd of each month. The total of my Monthly Payments is $ 16181.10 | Turn-In Fee (if I do not purchase the Vehicle) $ 350.00; N/A $ N/A; Total $ 350.00 | $ 18116.20 |

## 5. ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

| A. AMOUNT DUE AT LEASE SIGNING OR DELIVERY | | B. HOW THE AMOUNT DUE AT LEASE SIGNING OR DELIVERY WILL BE PAID | |
|---|---|---|---|
| (1) Capitalized Cost Reduction (Amount Paid in Cash) | $ 1585.10 | (1) Credit for Net Trade-In Allowance** | $ N/A |
| Sales/Use Tax on Amount Paid in Cash | N/A | (2) Manufacturer Contribution | N/A |
| (2) Capitalized Cost Reduction (Credit for Net Trade-In Allowance) | N/A | (3) Dealer Contribution | N/A |
| Sales/Use Tax on Credit for Net Trade-In Allowance | N/A | (4) Amount to be Paid in Cash | 2000.00 |
| (3) Advance Monthly Payment (1st Month) | 414.90 | (5) N/A | N/A |
| (4) Refundable Security Deposit | N/A | (6) N/A | N/A |
| (5) Initial Title Fees | N/A | (7) N/A | N/A |
| (6) Initial Registration Fees | N/A | (8) N/A | N/A |
| (7) Other: N/A | N/A | (9) N/A | N/A |
| (8) Other: N/A | N/A | | |
| (9) Other: N/A | N/A | | |
| (10) TOTAL | $ 2000.00 | (10) TOTAL | $ 2000.00 |

## 6. MY MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW:

| | | | |
|---|---|---|---|
| A. GROSS CAPITALIZED COST: The agreed upon value of the Vehicle ($ 27550.00) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance). | $ 30093.47 | F. RENT CHARGE: The amount charged in addition to the depreciation and any amortized amounts. | + 4706.9 |
| B. CAPITALIZED COST REDUCTION: The amount of any net trade-in allowance, rebate, noncash credit, or cash I pay that reduces the gross capitalized cost. | − 1585.10 | G. TOTAL OF BASE PAYMENT(S): The depreciation and any amortized amounts plus the rent charge. | = 16181.0 |
| C. ADJUSTED CAPITALIZED COST: The amount used in calculating my base monthly payment. | = 28508.37 | H. LEASE PAYMENTS: The number of payments required during the term of my Lease. | ÷ 39 |
| D. RESIDUAL VALUE: The value of the Vehicle at the scheduled end of the Lease Term used in calculating my base monthly payment. | − 17034.25 | I. BASE MONTHLY PAYMENT: | = 414.90 |
| E. DEPRECIATION AND ANY AMORTIZED AMOUNTS: The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. | = 11474.12 | J. MONTHLY SALES/USE TAX: | + N/A |
| | | K. OTHER: N/A | + N/A |
| | | L. OTHER: N/A | + N/A |
| | | M. TOTAL MONTHLY PAYMENT ("MONTHLY PAYMENT") = | $ 414.90 |

**EARLY TERMINATION. I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.**

7. **EXCESSIVE WEAR AND USE.** I may be charged for excessive wear based on Lessor's standards for normal use and for mileage in excess of 12000 miles per year at the rate of 15 cents per mile.

8. **PURCHASE OPTION AT END OF LEASE TERM.** I have an option to purchase the Vehicle at the end of the Lease Term for $ 17034.25, plus any required taxes and fees.

9. **OTHER IMPORTANT TERMS.** Review this Lease for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable.

## 10. ITEMIZATION OF GROSS CAPITALIZED COST (See Section 6A)

| | | | |
|---|---|---|---|
| A. Agreed upon Value of Vehicle | $ 27550.00 | H. Optional Vehicle Service Contract | $ N/A |
| B. Sales/Upfront/Other Tax | $ N/A | I. E-REG FEE | $ 49.00 |
| C. License, Title, and Registration Fees | $ 46.00 | J. TAVT | $ 1154.47 |
| D. Outstanding Prior Credit or Lease Balance | $ N/A | K. N/A | $ N/A |
| E. Dealer Documentation/Preparation/Service Fee | $ 699.00 | L. N/A | $ N/A |
| F. Acquisition Fee | $ 595.00 | | |
| G. Optional Maintenance Contract | $ N/A | M. Total = Gross Capitalized Cost | $ 30093.47 |

## 11. WARRANTIES

If the Vehicle is new, the Vehicle is covered by the manufacturer's standard new car warranty. If the Vehicle is not new, there is no express warranty on the Vehicle unless indicated below.

☐ Used vehicle limited warranty provided by the manufacturer. ☐ Remainder of standard new vehicle limited warranty provided by the manufacturer.

☐ Other: N/A

LESSOR LEASES THE VEHICLE TO ME "AS IS", EXCEPT AS PROVIDED IN THIS LEASE (AND UNLESS PROHIBITED BY LAW). LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS AS TO THE VEHICLE'S (OR ANY OF ITS PARTS OR ACCESSORIES) CONDITION, MERCHANTABILITY, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND LESSOR MAKES NO OTHER REPRESENTATIONS OR WARRANTIES WHATSOEVER. If this Lease is entered into in Kansas, Maine, Massachusetts, Mississippi, Vermont (if the Vehicle is new) or West Virginia, Lessor does not disclaim any implied warranty of merchantability or fitness for any particular purpose.

## 12. OPTIONAL SERVICE CONTRACT, INSURANCE AND OTHER PRODUCTS

I do not have to purchase any of the optional products or services listed below to enter into this Lease, and they are not a factor in Lessor's credit decision. If I have indicated so below, it means I want to purchase the products and/or services for the price(s) listed below. If I have decided to purchase any of the products and/or services, I acknowledge that I have read the separate contract or notice which describes its terms and conditions. Coverage may be subject to approval by the provider. If the price of any products and/or services I bought is not part of the Itemization of Gross Capitalized Cost, I will pay for them upon Lease signing or delivery. Lessor may receive a portion of the price of any optional products and/or services I buy.

| Product | Premium or Charge | Provider | Term | Lessee Initials |
|---|---|---|---|---|
| Optional Maintenance Contract | $ N/A | N/A | N/A | N/A / N/A |
| Optional Vehicle Service Contract | $ N/A | N/A | N/A | N/A / N/A |
| Other N/A (Product Description) | $ N/A | N/A | N/A | N/A / N/A |
| Other N/A (Product Description) | $ N/A | N/A | N/A | N/A / N/A |
| Other N/A (Product Description) | $ N/A | N/A | N/A | N/A / N/A |
| Other N/A (Product Description) | $ N/A | N/A | N/A | N/A / N/A |

Notice: If you do not meet your Lease obligations, you may lose the Vehicle.

## 13. ESTIMATED FEES AND TAXES DURING LEASE TERM

**I agree to pay when due or reimburse Lessor for all title/license/registration/official fees and taxes over the term of my Lease (including any extensions), whether paid at Lease signing, included in my Monthly Payments or billed otherwise by Lessor or my taxing jurisdiction, including personal property taxes. Lessor estimates this amount to be: $ 1305.72. The actual total of fees and taxes may be higher, or lower, depending upon whether the garaging address of the Vehicle changes, and on the tax rates in effect, or the value of the Vehicle at the time a fee or tax is assessed. Some taxes and fees may come due after the Lease terminates. I agree to pay any such amounts within 10 days of being invoiced or otherwise when indicated by the taxing authority. I will be responsible for any fines or penalties if I fail to pay the bill when due.**

## 14. VEHICLE INSURANCE (See Section 24 for Additional Requirements)

I affirm that the following insurance coverage is in force as of the Lease Date. I must instruct my insurance agent to add as an additional loss payee and as an additional insured, and send the Insurance Policy, Endorsement, or Certificate to: Honda Lease Trust c/o PDP Services, P.O. Box 650201, Hunt Valley, Maryland 21065-0201.

Insurance Provider: FARMERS Policy Number:

Agent's Name: RICHARD WALKER BOWERS Agent's Address: 3800 HOLCOMB BRIDGE RD SUTE C P'TREE CORNERS GA 30092 Agent's Phone Number: (770)543-9429

## 15. ARBITRATION

The parties agree that any unresolved disputes shall be submitted to arbitration in accordance with the Arbitration clause (Section 53). By initialing this Section, I am confirming that I have read this Section and the Arbitration clause, including the method of opting out of arbitration. Lessee's Initials [initials] ✓ Co-Lessee's Initials N/A ✓

## 16. NOTICES

**FOR PURPOSES OF THE NOTICES BELOW "YOU" REFERS TO LESSEE.**

**If this Lease is for a consumer purpose, then this Lease is CONSUMER PAPER.**

**WARNING - Unless a charge is included in this Lease for public liability or property damage insurance, none is provided by Lessor.**

**NOTICE TO MICHIGAN LESSEES:** The early termination payoff balance of the Vehicle as determined by Lessor may be different than the actual cash value of the Vehicle as determined by the insurer of the Vehicle. Except to the extent the GAP Waiver in Section 39 applies, Lessee is responsible for the amount by which the Adjusted Lease Balance defined in Section 28 exceeds the proceeds from the insurer of the Vehicle. By initialing this box, you represent that you have read and understand this notice. Lessee's Initials N/A ✓ Co-Lessee's Initials N/A ✓

**THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION. YOU ARE ENTITLED TO AN EXACT COPY OF THE AGREEMENT YOU SIGN.**

**YOU AGREE THAT ASSIGNEE AND AHFC MAY OBTAIN YOUR CREDIT REPORT, CREDIT SCORE OR OTHER CONSUMER REPORT FOR USE IN CONNECTION WITH COLLECTION OF AMOUNTS OWED UNDER THIS LEASE, ENFORCEMENT OF THIS LEASE, AND MARKETING SOLICITATIONS FOR RETAIL INSTALLMENT FINANCING OR LEASE PROGRAMS AFTER LEASE DATE.**

**THIS LEASE CONTAINS THE ENTIRE AGREEMENT BETWEEN YOU AND US.** No agreements exist between you and Lessor except as set forth in this Lease. The agreement between the parties may only be modified by a writing signed by you and Lessor, except that the Lease may be extended by agreement over the phone or an agreement formed through other electronic means of communication for a period of no more than six months. No course of performance will modify the agreement between the parties or constitute a waiver of any right under this Lease. Lessee's Initials [initials] ✓ Co-Lessee's Initials N/A ✓

**NOTICE: (1) BY SIGNING BELOW, YOU AGREE TO ALL THE PROVISIONS ON BOTH SIDES OF THIS LEASE. (2) YOU ACKNOWLEDGE THAT YOU HAVE READ THE ENTIRE LEASE, INCLUDING THE REVERSE SIDE. (3) YOU ACKNOWLEDGE THAT YOU HAVE RECEIVED A COMPLETELY FILLED-IN COPY OF THIS LEASE AND OF ANY OTHER AGREEMENTS, POLICIES OR CERTIFICATES THAT YOU SIGNED.**

**NOTICE TO CONSUMER: 1. Do not sign this agreement before you read it. 2. You are entitled to a copy of this agreement. 3. You may prepay the unpaid balance at any time in accordance with the terms set forth in the lease agreement.**

## 17. SIGNATURES

**A. INDIVIDUAL LESSEE SIGNATURE(S)**

X [signature] (Lessee Signature) ANDREW YURIEVICH PALTARAK (Name) X N/A (Co-Lessee Signature) N/A (Name)

X (Co-Lessee Signature) (Name) X N/A (Co-Lessee Signature) N/A (Name)

**B. BUSINESS LESSEE SIGNATURE**

X N/A (Lessee Signature) N/A (Business Name) N/A (Signor's Name) N/A (Title)

**C. LESSOR SIGNATURE AND ASSIGNMENT**

The authorized signature of the Lessor below has the effect of: (a) accepting the terms and conditions of this Lease; (b) acknowledging verification of the Lessee's insurance coverage required by this Lease; and (c) assigning to Honda Lease Trust, or its successors and assignees all of its right, title and interest in and to this Lease, the proceeds of this Lease and the Vehicle, according to the terms and conditions of the Lease Plan Agreement between Honda Lease Trust and the Lessor.

X [signature] (Authorized Signature) HONDA MALL OF GEORGIA (Name) F&I (Title)

## 18. CO-SIGNER SIGNATURE

GUARANTY: I/We jointly and severally guaranty payment of all amounts owed under this Lease. This means that if the Lessee(s) fails to pay any money owed, I/We will pay it. Upon default under the Lease, Lessor may proceed immediately against me/us for payment, without first proceeding against the Lessee(s), any other guarantor, or any security. I/We also will be liable for all fees, including attorneys' fees, that the Lessor incurs in enforcing the Lease or this guaranty. My/Our guaranty of payment is unconditional, and will not be affected by any settlement, extension, renewal or amendment of the Lease, or the release of any person or security. I/We waive all notices of every kind and nature and also waive all rights to demand and presentment.

Co-Signer/Guarantor Signature; Print Name; N/A (Co-Signer/Guarantor Signature); N/A (Print Name)

HF LS AOS 08/16

**SEE OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS**

HFS

## PAYMENTS

**19. PAYMENT SCHEDULE:** I agree to make payments to Lessor according to the schedule shown on the reverse side. The first Monthly Payment is due on the Lease Date. The second Monthly Payment must be due on or between the 1st and 28th of the month. If the total Monthly Payment includes sales or use tax, this payment amount may vary to the extent of any tax increase or decrease. I will not change or stop any Lease payments for any reason, even if the Vehicle is stolen, destroyed, seized by a governmental authority, or experiences mechanical problems.

**20. LATE CHARGE/RETURNED CHECK CHARGE:** Unless prohibited by law, I will pay a late charge of the lesser of $25 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due, except if the Dealer is located in Colorado, Iowa or Maine. If the Dealer is located in Colorado, I will pay a late charge of **$15** of any Monthly Payment that is not received within 10 days after it is due. If the Dealer is located in Iowa or Mississippi, I will not owe late charges. If the Dealer is located in Maine, I will pay a late charge of the lesser of **$10** or **5%** of the unpaid portion of any Monthly Payment that is not received within 15 days after it is due. **Returned Check Charge:** I will also pay a **$20** charge for any check or similar instrument returned for any reason, unless prohibited by applicable law.

**21. SECURITY DEPOSIT:** A refundable security deposit may be part of the payment I make when I sign this Lease. At Lease termination, whether early or as scheduled, Lessor will deduct from the security deposit any amounts I owe under this Lease and do not pay. If I fully perform my obligations under this Lease, upon termination any part of the security deposit not credited will be refunded to me. In the event Lessor has not been billed for personal property taxes for the Vehicle for the year (or part thereof) in which the Lease terminates, I authorize Lessor to retain a portion of the security deposit estimated to cover any personal property tax allocation for such year and apply it to the tax when due. Unless prohibited by applicable law, no interest, increase or profits will accrue or be paid to me on the security deposit.

**22. OTHER CHARGES/TOTAL OF PAYMENTS:** I understand that Section 3 of the Lease ("Other Charges") and Section 4 of the Lease ("Total of Payments") do not reflect amounts collected on behalf of third parties (such as property taxes, fines, or fees) or charges imposed if I fail to abide by or modify the terms of this Lease. I am also responsible for these amounts and will refer to all other terms and conditions of this Lease for a description of all charges due. In addition, unless prohibited by law, the Lessor or a third-party may charge me for additional services provided outside the ordinary terms of this Lease. Before performing the additional services, the Lessor or third-party will tell me about the charges verbally or in writing, including by text message, email, or other electronic means. The additional services will not be performed unless I agree to pay the additional charges disclosed. As an example, additional charges may apply to special handling of payments made by telephone, the Internet, or other electronic payment systems. Unless prohibited by law, all or any portion of the additional charges may be retained by the Lessor or by third parties or agents involved in the payment processing or additional services.

**23. PAYOFF AGREEMENT:** Lessor agrees to pay the payoff amount owed on my trade-in vehicle, if any. The amount is the Prior Contract or Lease Balance disclosed in the box on the first page entitled, "Trade-In Vehicle and Its Allowance." To determine this amount, the Lessor is relying on information from me, the credit lienholder, and/or lessor of my trade-in vehicle. If the actual payoff amount is more than the disclosed Prior Contract or Lease Balance, I agree to immediately pay the remaining amount owed to the contract lienholder or lessor of my trade-in vehicle or to immediately repay you if the Lessor repays it. If the actual payoff amount is less than the amount disclosed and the Lessor receives a refund of the difference, the Lessor will refund it to me or subtract it from the amount I owe under the Lease, at the Lessor's option, unless otherwise required by law.

## VEHICLE MAINTENANCE AND USE

**24. VEHICLE INSURANCE:** I will pay for and maintain during the Lease term, and until the Vehicle is returned to Lessor, insurance on the Vehicle which has the state required minimums for: (a) Public Liability Insurance for bodily injuries and property damage; and (b) Physical Damage Insurance covering loss or damage to the Vehicle, with deductibles of no more than **$1,000** for collision and upset loss and **$1,000** for comprehensive fire and theft loss. The Policy of Public Liability Insurance must show Assignee as an additional insured. The policy of Physical Damage Insurance must show Assignee as loss payee. I may choose to get the required coverages myself or through any person. The policies must be written by an insurance company acceptable to Lessor. I agree to provide written proof of insurance to Lessor upon request, and authorize Lessor, and its agents, to contact my insurance agent and insurance company to verify coverage as required by this Lease. I further authorize Lessor to endorse my name(s) on any check or draft from my insurance company for any claim and agree that any such payments shall be delivered directly to Lessor. Lessor may change the amounts of required insurance. I acknowledge that the limits required under this Lease may not be sufficient for my needs, and will rely on my insurance agent. If I fail to meet these insurance requirements, the Lessor may obtain insurance on my behalf at my expense. If the Vehicle is damaged, the Lessor will decide if it is repairable and if it should be repaired. If the Vehicle is repaired, the Lessor will apply to the costs of repair any insurance proceeds I receive for its loss or damage. I must pay for any loss or damage that is not paid by insurance proceeds. I must also keep making any payments as they come due during this Lease even if the Vehicle is damaged or unusable for a period of time.

**25. VEHICLE MAINTENANCE AND OPERATING COSTS:** I will maintain the Vehicle in good working order and condition and make all necessary repairs made, using genuine manufacturer's replacement parts. I will pay all expenses for Vehicle use and operation, including maintenance, repair, fluids, tires and other expenses. At my expense, I will have the Vehicle serviced in accordance with the manufacturer's minimum recommendations and as requested by the manufacturer in connection with any recall campaign, have the service validated, and be able to provide proof that such service has been performed. Lessor may inspect the Vehicle at any reasonable time.

**26. USE:** I will notify my insurance company and HFS immediately of any damage to or loss of the Vehicle, and will cooperate following any such incident. I will not:

(a) allow unlicensed drivers to operate the Vehicle;
(b) use or allow the Vehicle to be used illegally, improperly, or to transport goods or people for pay;
(c) use the Vehicle in a way that causes cancellation or suspension of insurance or causes the manufacturer's warranty to become void;
(d) use the Vehicle to pull trailers that exceed the manufacturer's trailer towing recommendations;
(e) remove the Vehicle from the 48 contiguous United States without Lessor's written consent (unless the Vehicle was originally leased in Alaska or Hawaii);
(f) change, mark or install equipment in the Vehicle without Lessor's written consent;
(g) use the Vehicle in any form of auto racing, or high performance driving events or schools, or related activities; or
(h) use the Vehicle in any off-road activity, unless the Vehicle is a sport utility vehicle.

**27. REGISTRATION:** I will register the Vehicle, as required in the state where the Vehicle is garaged and pay for all license, title and registration costs. If I move or change the Vehicle's garaging address, I will notify HFS immediately and pay for all resulting taxes and title, registration or other fees.

## ENDING MY LEASE

**28. PURCHASE OPTION PRIOR TO THE END OF LEASE TERM:** I have the option to purchase the Vehicle at any time (unless a governmental agency has seized the Vehicle and instructed Lessor not to release the Vehicle to me). This purchase option may be exercised only by the Lessee. If I purchase the Vehicle prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (defined below), plus (a) any payments or other charges due and unpaid under this Lease (except Excess Mileage and Excessive Wear and Use charges) and (b) any taxes or fees required by law in connection with the purchase. The "Adjusted Lease Balance" is the unamortized portion of the Adjusted Capitalized Cost, determined on an Actuarial basis, where earnings are accrued on the first day of every period. "Actuarial basis" method means the method of allocating Base Monthly Payments between: (i) the reduction of the Adjusted Capitalized Cost to the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment is applied first to the accumulated Rent Charges and any remainder is subtracted from, or any deficiency is added to, the balance of the Adjusted Capitalized Cost. I will re-register and retitle the Vehicle in my name at the time I purchase it. If I fail to do so, Lessor may cancel the registration.

**29. NOTICE:** If I exercise the Purchase Option under this Lease, I acknowledge that HFS, on behalf of Assignee, does hereby transfer, set over and assign all of its rights (but not its obligations) to sell such Vehicle to Honda Finance Exchange, Inc. pursuant to the Sub-Servicing and Master Exchange Agreement between HFS and Honda Finance Exchange, Inc. **Notice is hereby given that all of the rights (but not the obligations) to sell the Vehicle have been assigned to Honda Finance Exchange, Inc. pursuant to such Master Exchange Agreement.**

**30. EARLY TERMINATION LIABILITY:** If I am not in default, I may terminate this Lease early. If I decide to terminate this Lease early, upon return of the Vehicle to Lessor, I will owe to Lessor:

(a) any monthly payments already due and unpaid and any other amounts owed arising from my failure to keep promises under this Lease; plus
(b) any official fees and taxes imposed in connection with the termination; plus
(c) the Early Termination Charge, which is the amount, if any, by which the then Adjusted Lease Balance (determined as described in section 28 above) exceeds the Realized Value of the Vehicle (determined as described in section 31 below); plus
(d) the Turn-in Fee, as described in Section 3 above.

Lessor may terminate this Lease at any time if the Lease is in default, in which case, in addition to the foregoing amounts, I also agree to pay Lessor's costs of repossessing, storing and transporting the Vehicle as well as Lessor's costs of collection, including court costs and reasonable attorneys' fees, to the extent permitted by law and provided that if this Lease is governed by Iowa, Maine or Ohio law, attorneys' fees will not be owed.

**31. DETERMINATION OF REALIZED VALUE OF THE VEHICLE:** If the Vehicle is lost, stolen or destroyed, the Vehicle will be a "Total Loss" and the Realized Value will be the actual proceeds Lessor receives from my insurer or any other party in payment for the loss. If no proceeds are received, the Realized Value will be zero. In all other situations the Realized Value of the Vehicle upon early termination will be determined in one of the following ways: (a) by written agreement between Lessor and me, provided it is signed within **10** days (or as required by law) after I return the Vehicle to Lessor; (b) by a professional appraisal of the wholesale value of the Vehicle, if I choose to obtain one at my sole expense within **10 business** days (or as required by law) after returning the Vehicle to Lessor. Lessee may select an independent third party appraiser who is acceptable to Lessor to make the appraisal; the appraised value will then be the Realized Value; or (c) if the Realized Value is not determined by (a) or (b) above within **10** days (or as required by law) after I return the Vehicle to Lessor, Lessor will proceed to sell the Vehicle at wholesale in a commercially reasonable manner. If the law requires a specific method or process, the Lessor will follow it as required.

**32. SCHEDULED END OF LEASE LIABILITY:** I agree that if I do not purchase the Vehicle at the end of the Lease, my payment liability at that time will be the sum of:

(a) any Monthly Payments already due and unpaid and any other amounts arising from my failure to keep my promises under this Lease; plus
(b) any Excessive Wear and Use amounts, defined below; plus
(c) any Excess Mileage charges; plus
(d) any official fees and taxes imposed in connection with Lease termination; plus
(e) the Turn-in Fee, as described in Section 3 above.

**33. EXCESSIVE WEAR AND USE/EXCESS MILEAGE:** If I do not purchase the Vehicle at the end of my scheduled Lease term, and subject to the limited waiver below, I will reimburse Lessor for the amount it would cost Lessor to repair excessive wear and use to the Vehicle, whether or not Lessor makes repairs. "Excessive Wear and Use" includes, but is not limited to:

**(a) any mechanical defect or failure;**
**(b) broken or missing parts or accessories (including missing keys or remote entry devices);**
**(c) damaged body, fenders, bumpers, metal work, lights or trim, or damaged or broken glass;**
**(d) paint which is chipped;**
**(e) interior rips, stains, burns, or excessively worn areas;**
**(f) missing or unsafe wheels or tires (including spare), tires with less than 1/8th inch of tread remaining at the shallowest point;**
**(g) damage or any other condition that makes the Vehicle unsafe or unlawful to operate; or**
**(h) safety and emission control equipment not in proper working order.**

I also agree to pay for Excess Mileage as stated in Section 7.

**34. LIMITED EXCESSIVE WEAR AND USE WAIVER:** Lessor agrees to waive Excessive Wear and Use charges up to $500 if, at the end of the scheduled termination date, I am in compliance with all the terms and conditions of this Lease including, without limitation, payment obligations and insurance requirements. I remain responsible for any damage and for Excessive Wear and Use charges that are in excess of the $500 waiver. The waiver does not apply to Excess Mileage charges.

**35. RETURN OF THE VEHICLE:** Whether the Lease is terminated early or as scheduled, I agree to return the Vehicle to the Dealer's address as shown on this Lease or to any address HFS specifies. **I am aware that if I am not in default, Lessor may agree to extend this Lease for a period of no more than six months by agreement over the telephone or an agreement formed through other electronic means of communication. I agree to contact Lessor for additional details.** Otherwise, if I keep possession of the Vehicle past the Lease Term, I agree to continue Monthly Payments, but I understand that continued payment does not permit me to keep the Vehicle. I agree to pay for any damages that Lessor may suffer because I failed to return the Vehicle at Lease termination.

**36. ODOMETER DISCLOSURE STATEMENT: On termination of this Lease (or upon election to purchase the Vehicle), I agree to provide a signed written disclosure to Lessor of the correct odometer mileage on the Vehicle, as required by federal law, and understand that the failure to do so may result in fines and/or imprisonment. I agree to pay Lessor for any loss, claims, damage, costs and expenses (including legal expenses) which result from my failure to promptly provide Lessor with a correct written odometer disclosure statement.**

## DEFAULT OR LOSS OF THE VEHICLE

**37. DEFAULT:** Unless otherwise prohibited by applicable law, I will be in default if:

(a) I fail to make any payment when due under this Lease and any required period before a default may occur has elapsed;
(b) a bankruptcy petition is filed by or against me;
(c) a proceeding in receivership is filed by or against me or my property, or I make an assignment for the benefit of creditors;
(d) I fail to comply with the insurance requirements of this Lease;
(e) I do not repair or maintain the Vehicle as the Lease requires;
(f) the Vehicle is lost, stolen, destroyed or determined by Lessor to be unsuitable for use ("Total Loss");
(g) I fail to answer traffic summons or pay any traffic tickets or other fines when due;
(h) the Vehicle becomes subject to a lien;
(i) the Vehicle is seized or confiscated for any reason by a law enforcement agency;
(j) I break any of my other agreements in the Lease and such breach significantly impairs the prospect of payment, performance, or realization of Lessor's interest in the Vehicle; or
(k) I die.

In Iowa, Kansas, and Utah the events described in (b) through (k) will only be considered a default if the event has materially impaired the condition, value or protection of the Vehicle and Lessor's rights to the Vehicle or the event has materially impaired the Lessee's prospect to pay amounts due under the Lease. **Remedies**: In the event of default, Lessor may do any or all of the following:

(a) take any reasonable measures designed either to correct the default or to save Lessor from loss, in which case I will pay Lessor upon Lessor's request for the costs and expenses incurred;
(b) terminate the Lease and my rights to possess and use the Vehicle;
(c) take possession of the Vehicle by any method or manner permitted by law;
(d) determine my termination liability on an early termination basis which I agree to pay immediately;
(e) apply my security deposit to any amounts I owe; and
(f) pursue any other remedy permitted by law.

All of Lessor's rights are cumulative and the taking of any action will not prevent the taking of any other action. I also agree to pay Lessor for all collection and legal costs, including all reasonable attorneys' fees and court costs Lessor incurs, to the extent permitted by law.

**38. TOTAL LOSS:** If the Vehicle is lost, stolen, destroyed or determined by Lessor to be unsuitable for use, the Vehicle is a Total Loss and I am in default and I will owe the Early Termination Liability set forth in Section 30, less the Turn-in Fee.

**39. GAP WAIVER:** If I promptly report a Total Loss and I have maintained the required insurance coverages and Lessor receives all insurance proceeds, Lessor will waive the Early Termination Charge described in Section 30(c) (the "GAP Waiver"), unless an exclusion applies. If the GAP Waiver applies, I will only owe Lessor for the Early Termination Charges described in Sections 30(a) and 30(b), for any insurance deductible and for any amounts deducted from the insurance settlement for other, prior damage, excessive wear, excessive use and/or excessive mileage. Ancillary products will be canceled directly with the provider and any refunds received will be applied to my outstanding balance prior to applying the GAP Waiver. **Exclusions:** The GAP Waiver does not apply if:

(a) The Vehicle has been seized or confiscated for any reason by a law enforcement agency;
(b) I failed to file a police report after a Vehicle theft;
(c) The Total Loss occurred while the Vehicle was outside the United States;
(d) The Total Loss was caused by my wrongful act or omission, or gross negligence;
(e) A Default, other than a payment default, has occurred and I am in Default.
(f) I fail to provide information or documents requested by the Lessor in connection with the Total Loss, such as insurance information.

## ADDITIONAL INFORMATION

**40. OWNERSHIP: This is a lease agreement.** Lessor owns the Vehicle. I agree that this Lease is a true Lease for tax and other purposes and that Lessor will receive the benefits of ownership. Lessor has not given me any information or advice regarding any possible tax consequences or benefits under this Lease.

**41. REIMBURSEMENT AGREEMENT:** I understand and agree that I am responsible for promptly paying any fines incurred on the Vehicle, such as traffic or parking tickets, and that this liability is joint and several if this Lease is signed by more than one Lessee. I authorize Lessor to provide any information about me requested or required by a state parking or traffic authority in connection with any such parking or traffic ticket. If Lessor pays any repair bills, storage bills, taxes, fines, tickets or other charges on the Vehicle, I agree to repay the amount to Lessor immediately upon demand. If I do not pay, I will reimburse HFS and pay a **$20** administrative fee, unless prohibited by law, for every such fine, ticket, penalty, or other charge paid on my behalf.

**42. LESSEE'S REPRESENTATIONS:** I promise that I have given true and correct information in the application for credit, and have no knowledge that would make that information untrue in the future. Lessor has relied on the truth and accuracy of that information in entering into this Lease. I promise that I have given a true payoff amount on any Vehicle traded in and I will compensate Lessor to the extent the payoff amount is inaccurate.

**43. NOTICES/NO WAIVER:** I agree to notify Lessor within **30** days of any change in my address. Unless I notify Lessor in writing of any change in my address, any notices Lessor sends me are sufficient if sent to my address as shown on this Lease. Lessor's waiver or excuse of a Default is not a waiver or excuse of any future default and any delay in exercising any remedies under this Lease is not a waiver of Lessor's right to exercise those remedies. I waive all right to demand, prior notice of demand, notice of acceleration and notice of intent to accelerate. Lessor can waive or delay the enforcement of its rights as to any person signing this Lease without affecting its rights as to any other person signing this Lease. I also agree that Lessor can release any signer from his or her obligations without releasing any other signer from their obligations.

**44. SECURITY INTEREST:** I authorize HFS, on my behalf, to settle or release any claim under the insurance related to Lessor's ownership of the Vehicle, to receive and endorse any checks or drafts representing premium rebates and/or proceeds of such insurance, and to apply such amounts to my obligations under this Lease. HFS may make and receive claims for all proceeds paid or payable under any service contract purchased under this Lease for application to my obligations under this Lease. In the event I am in default under this Lease, HFS may cancel any service contracts and receive any funds paid or payable as a rebate, refund, return or otherwise.

**45. COMMUNICATION WITH LESSOR:** Calls to or from Lessor, Assignee and AHFC are monitored and recorded. I consent to receive emails, prerecorded messages and/or autodialed calls (including text messages) relating to this Lease, the Vehicle, my account, lease-end options, and promotions. These communications may be made by Lessor, Assignee, AHFC or their agents or assignees, even if my phone number is registered on any state or federal Do Not Call list. I may incur a charge for calls by my telephone carrier. Lessor, Assignee or AHFC may obtain and contact email addresses and phone numbers provided by me directly or obtained through other lawful means. I agree to provide notice within 30 days of any change to my email address or phone numbers by writing to HFS at Honda Financial Services, P.O. Box 165007, Irving, TX 75016. My consent to this provision is not required to execute this Lease.

**46. ASSIGNMENT: I agree not to transfer, sublease, rent, or assign this Lease, the Vehicle, or my right to use the Vehicle.** This Lease will be assigned to the Assignee identified on the other side. HFS will administer this Lease. I agree to make all payments and perform all other obligations under this Lease to HFS.

I acknowledge that HFS (and Assignee, if different) will not have to make any repairs, maintain the Vehicle or perform any of Dealer's duties under this Lease. HFS has the power to act on behalf of Assignee to administer, enforce and defend this Lease.

**47. LIMITED POWER OF ATTORNEY:** I irrevocably appoint Lessor as my attorney-in fact to (a) settle all insurance claims related to the Vehicle (b) endorse my name on all checks I receive for loss or damage to the Vehicle, and (c) execute my name on all title, registration and other documents related to the Vehicle, such as a state Department of Motor Vehicles application for certificate of title or lien notation. This power of attorney is irrevocable and coupled with an interest.

**48. CREDIT REPORTING:** I authorize HFS and its affiliates, at any time, to reinvestigate any information provided on my credit application and to verify my current credit standing and, in the course of doing so, request and receive credit bureau reports. If I default under this Lease, I authorize HFS and its affiliates to make any credit inquiries HFS and its affiliates deem appropriate, and understand that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency. I authorize HFS and its affiliates and others to exchange credit, account, and financial information about me at any time, except to the extent I have instructed Lessor otherwise and only to the extent permitted by applicable law.

**49. MODIFICATIONS/GOVERNING LAW:** This Lease sets forth all of the agreements between Lessor and Lessee for the lease of the Vehicle, and no modification of this Lease shall be valid unless it is made in writing and signed by Lessor and Lessee. Notwithstanding the foregoing provision and unless otherwise prohibited by law, a continuation, verbally agreed to or agreed to through electronic means of communication by Lessor and Lessee, of a Lease Term not to exceed six months beyond the originally scheduled end of Lease Term shall be valid. If any provision of this Lease is unenforceable or invalid, that provision shall be severed from the remainder of the Lease and the validity and enforceability of the remaining provisions shall not be affected or impaired. This Lease is to be governed by the laws of the state in which the Dealer is located as of the date of execution of this Lease.

**50. LIMITATION OF LIABILITY:** I agree that Lessor is not responsible for indirect or consequential damages such as loss of profits and personal injury which are caused by any Vehicle defect, Vehicle damage or related to the time elapsed during which I do not have use of the Vehicle because it is being repaired or serviced.

**51. CLASS ACTION WAIVER. I HEREBY WAIVE ANY RIGHT I MAY HAVE TO PARTICIPATE IN A CLASS ACTION, BRING A CLASS ACTION, OR PROCEED ON A CLASS BASIS.**

**52. ADDITIONAL STATE LAW NOTICES.**

**A. NOTICE TO COLORADO LESSEES IN EVENT OF TOLL VIOLATIONS:** Pursuant to the requirements of Colorado law, I will be liable for payment of all toll evasion violation civil penalties incurred on or after the date I take possession of the Vehicle. The Lessor will provide my name, address and state driver's license number to the proper authorities when a toll evasion violation civil penalty is incurred during the term of this Lease.

**B. NOTICE TO MISSISSIPPI LESSEES: A DOCUMENTARY/SERVICE FEE IS NOT AN OFFICIAL FEE AND IS NOT REQUIRED BY LAW. HOWEVER, IT MAY BE CHARGED TO A BUYER/LESSEE FOR THE HANDLING OF DOCUMENTS AND THE PERFORMING OF SERVICES RELATED TO THE SALE OR LEASE AND MAY INCLUDE DEALER PROFIT. THIS NOTICE IS REQUIRED BY REGULATION OF THE MISSISSIPPI MOTOR VEHICLE COMMISSION.**

## ARBITRATION: PLEASE READ THIS SECTION CAREFULLY

**53. ARBITRATION:**

**PLEASE READ THIS ARBITRATION PROVISION CAREFULLY TO UNDERSTAND YOUR RIGHTS. BY ELECTING ARBITRATION, YOU AGREE THAT ANY CLAIM THAT YOU MAY HAVE IN THE FUTURE MUST BE RESOLVED THROUGH BINDING ARBITRATION. YOU WAIVE THE RIGHT TO HAVE YOUR DISPUTE HEARD IN COURT AND WAIVE THE RIGHT TO BRING CLASS CLAIMS. YOU UNDERSTAND THAT DISCOVERY AND APPEAL RIGHTS ARE MORE LIMITED IN ARBITRATION.**

Arbitration is a method of resolving a claim, dispute or controversy without filing a lawsuit. By agreeing to arbitrate, the right to go to court is waived and instead claims, disputes or controversies are submitted to binding arbitration. This provision sets forth the terms and conditions of our agreement. **YOU** and **HONDA** agree and acknowledge that this Lease affects interstate commerce and the Federal Arbitration Act ("FAA") applies.

By signing the Arbitration Consent, **YOU** elect to have disputes resolved by arbitration. **YOU**, **HONDA** or any involved third party may pursue a Claim. "Claim" means any dispute between **YOU**, **HONDA**, or any involved third party relating to your account, this Lease, or our relationship, including any application, the Vehicle, its performance and any representations, omissions or warranties. "Claim" does not include personal injury or wrongful death claims. **YOU** or **HONDA** may seek remedies in small claims court or provisional judicial remedies without arbitrating.

**YOU** or **HONDA** may select arbitration with American Arbitration Association, JAMS or National Arbitration and Mediation. Contact these sponsors for their rules.

The hearing will be in the federal district where **YOU** reside. If agreed, it may be by telephone or written submissions. Filing and arbitrator fees to be paid per the sponsor rules. You may contact the sponsor for a fee waiver. If no fee waivers, **HONDA** will pay filing and arbitrator fees up to $5,000, unless law requires more. Each party is responsible for other fees. Arbitrator may award costs or fees to prevailing party, if permitted by law. **HONDA** will not seek fees, unless the claims are frivolous.

Arbitrator shall be an attorney or current or retired judge familiar with automotive or consumer finance. The arbitrator shall follow substantive law, statute of limitations and decide all issues relating to the interpretation, construction, enforceability and applicability of this provision. The arbitrator may order relief permitted by law. This provision is governed and enforceable by the FAA. An award shall include a written opinion and be final, subject to appeal by the FAA.

This provision survives termination of this Lease or relationship, bankruptcy, assignment or transfer. If part of this provision is unenforceable, the remainder remains in effect. If unenforceability allows arbitration as a class action, then this provision is entirely unenforceable. **YOU** may opt out within 30 days of signing this Lease by sending a signed, written notice to **HONDA** at Honda Financial Services, P.O. Box 165007, Irving, TX 75016. **HONDA** reserves the right to make changes to this provision after providing written notice and an opportunity to opt out.

**HONDA** means Lessor, Dealer, Honda Lease Trust, American Honda Finance Corporation (AHFC), American Honda Motor Co., Inc., Honda Finance Exchange, Inc., Acura Financial Services (AFS), Honda Financial Services (HFS), parents, subsidiaries, predecessors, successors, assignees, and officers, employees, representatives and agents. **YOU** means Lessee and Co-Lessee to this Lease.

SEE OTHER SIDE FOR ADDITIONAL TERMS AND CONDITIONS