UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)          Date:  June 24, 2024
Title:    Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

Present:  The Honorable MICHAEL W. FITZGERALD, U.S. District Judge

          Deputy Clerk:                    Court Reporter:
          Rita Sanchez                      Not Reported

          Attorneys Present for Plaintiffs:  Attorneys Present for Defendant:
          None Present                       None Present

Proceedings (In Chambers):   [REDACTED] ORDER RE: PLAINTIFFS' MOTION
                             TO CERTIFY CLASS [194] AND DEFENDANT'S
                             MOTIONS TO EXCLUDE TESTIMONY [215] [220]

     Before the Court are three related motions:

     The first is Plaintiffs' Motion to Certify Class (the "Certification Motion"), filed
on August 14, 2023.  (Docket No. 194).  Defendant American Honda Motor Co., Inc.
("Honda") filed an Opposition on December 1, 2023.  (Docket No. 214).  Plaintiffs
filed a Reply on March 1, 2024.  (Docket No. 233).

     The second is Honda's Motion to Exclude the Testimony of Roland D. Hoover
Pursuant to Rule 702 (the "First *Daubert* Motion"), filed on December 1, 2023.
(Docket No. 215).  Plaintiffs filed an Opposition on March 1, 2024.  (Docket No. 234).
Honda filed a Reply on April 11, 2024.  (Docket No. 244).

     The third is Honda's Motion to Exclude the Testimony of J. Michael Dennis and
Colin Weir Pursuant to Rule 702 (the "Second *Daubert* Motion"), filed on December
1, 2023.  (Docket No. 220).  Plaintiffs filed an Opposition on March 1, 2024.  (Docket
No. 235).  Honda filed a Reply on April 11, 2024.  (Docket No. 243).

     The Court has read and considered the papers on the motions and held a hearing
on **May 6, 2024**.

---

CIVIL MINUTES—GENERAL                                              1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

**Case No.**  CV 18-4007-MWF (PJWx)          **Date:**  June 24, 2024
Title:       Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

For the reasons discussed below, the Court rules as follows:

- The First *Daubert* Motion is **GRANTED** with respect to Mr. Hoover's opinions on the safety implications of the alleged defects under Federal Rule of Civil Procedure 37(c)(1) but is otherwise **DENIED**.

- The Second *Daubert* Motion is **DENIED** because the Court concludes that the methodology on which Plaintiffs' damages experts relied is sufficiently reliable.

- The Certification Motion is **DENIED** *in part* with respect to Plaintiffs' unjust enrichment claim for failure to show predominance.  The Certification Motion is otherwise **GRANTED** with respect to the consumer protection, implied warranty, and negligent design claims.

## I.    **BACKGROUND**

This putative class action concerns alleged design defects in the "Honda Sensing" system – specifically, the Collision Mitigation Breaking System ("CMBS") – in certain Honda vehicles (the "Vehicles").  The Court previously summarized the facts of this action in its Order Granting in Part Honda's Motion to Dismiss Plaintiffs' Consolidated Class Action Complaint (the "Prior Order").  (Docket No. 114).  The Court incorporates by reference the Background section of the Prior Order as if fully set forth herein.

## II.    **APPLICATIONS TO SEAL**

Before the Court are three Applications to Seal (collectively the "Applications"):

- Plaintiffs' Application to Seal (Docket No. 192), filed on August 14, 2023, which seeks to seal portions of the Certification Motion, the Declaration of

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

**Case No.  CV 18-4007-MWF (PJWx)**          **Date:  June 24, 2024**
Title:       Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

David Stein, and Exhibits 1–49, 51–77, 81–117, 120–122, and 124–126 that
reference materials designated as "Confidential" by Honda under the
Stipulated Protective Order (Docket No. 126).

- Honda's Application to Seal (Docket No. 216), filed on December 1, 2023,
  which seeks to seal portions of its Opposition to the Certification Motion, the
  First *Daubert* Motion, and Exhibits A, B, and JJ to the Declaration of Darlene
  M. Cho.

- Plaintiffs' Application to Seal (Docket No. 231), filed on March 1, 2024,
  which seeks to seal portions of their Reply in support of the Certification
  Motion, their Oppositions to the First and Second *Daubert* Motions, and
  Exhibits 130–131, 133–134, 136–138, and 161–163 that reference materials
  designated as "Confidential" by Honda.

"In this circuit, we start with a strong presumption in favor of access to court
records.  The common law right of access, however, is not absolute and can be
overridden[.]"  *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1135 (9th Cir.
2003) (citations omitted).  A party seeking to seal documents attached to dispositive
motions (or motions that are more than tangentially related to the merits) must show
"compelling reasons" for doing so.  *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809
F.3d 1092, 1099 (9th Cir. 2016) (instructing that the compelling reasons standard
applies where "the motion at issue is more than tangentially related to the underlying
cause of action").  Here, the underlying motion is for class certification.  Therefore,
compelling reasons must support the Applications.

The Court has reviewed the Applications and concludes that there are
compelling reasons to seal the designated information with the exception of Exhibits
55, 82, 84, and 107, which Honda concedes can be publicly disclosed.  (*See* Honda's
Reply Brief in support of its Application to Seal (Docket No. 241) at 1).  With respect
to the remaining documents, Honda contends that ███████████████████

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                Date:  June 24, 2024
Title:     Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

███████████████████████████████████████████████████ (*Id.* at 3–5).

Documents are properly filed under seal where disclosure would harm a party by forcing it to disclose trade secrets or other valuable confidential proprietary business information.  *See Foltz*, 331 F.3d at 1135; *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569–70 (9th Cir. 2008) (unpublished); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978) ("[T]he common-law right of inspection has bowed before the power of a court to ensure that its records are not used . . . as sources of business information that might harm a litigant's competitive standing").  The information the parties seek to file under seal contains valuable confidential proprietary business information, the public disclosure of which could harm Honda's competitive standing.

Accordingly, the Applications are **DENIED** with respect to Exhibits 55, 82, 84, and 107 but are otherwise **GRANTED**.

## III.   *DAUBERT* MOTIONS

Honda seeks to exclude (1) Plaintiffs' technical expert, Mr. Roland D. Hoover, and (2) Plaintiffs' damages experts, Dr. J. Michael Dennis and Mr. Colin Weir.  (First *Daubert* Motion at 1; Second *Daubert* Motion at 1).  Because Plaintiffs rely on these experts in their Certification Motion, the Court addresses Honda's motions first before determining whether Plaintiffs have met their burden under Rule 23.

Rule 702 provides that a "witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that" all of the following elements are met:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)          Date:  June 24, 2024
Title:        Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

    (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The inquiry into the admissibility of an expert opinion under Rule 702 is a "flexible one."  *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592–94 (1993)).

    In evaluating expert testimony provided in connection with a class certification motion, such as here, the Ninth Circuit instructs courts to use the evidentiary standard set forth in *Daubert*.  *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011).  "Under *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does not meet [Rule 702's] reliability standards by making a preliminary determination that the expert's testimony is reliable."  *Id.* at 982 (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145, 147–49 (1999)).  "*Daubert* does not require a court to admit or to exclude evidence based on its persuasiveness; rather it requires a court to admit or exclude evidence based on its scientific reliability and relevance."  *Id.* (citation omitted).  "The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate."  *Daubert*, 509 U.S. at 595.

## A.    Roland D. Hoover

    Plaintiffs offer Roland D. Hoover as their technical expert.  (*See* Expert Report of Roland D. Hoover ("Hoover Report") (Docket No. 193-5)).  Mr. Hoover received

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

Case No.  **CV 18-4007-MWF (PJWx)**          Date:  **June 24, 2024**
Title:      Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

his undergraduate degree in Mechanical Engineering from California State Polytechnic University, Pomona.  (*Id.* at 2).  He has ten years of experience in the design, development, and manufacturing of production vehicles at the Original Equipment Manufacturer (OEM) level.  (*Id.*).  From 2010 to 2016, he worked as a Senior Chassis Engineer at Hyundai KIA America Technical Center Inc.  (*Id.*).

Mr. Hoover's expert report covers the following three topics: (1) how automatic braking technology is developed and validated; (2) the significance of documents produced by Honda regarding false positive braking in its vehicles; and (3) whether the issues identified are common to all 2017–2019 Honda CR-Vs and 2018–2020 Honda Accords.  (*Id.* at 3).  In his report, Mr. Hoover offers his opinion that the Vehicle's braking system "should never activate hard braking in the absence of an imminent collision."  (*Id.* at 6).  Mr. Hoover's report defines "hard braking" as ███████████ ████████████████████████████████████  (*Id.* at 8).

The Court finds Mr. Hoover's opinion to be the product of reliable principles and methods.  Mr. Hoover's expert report is based on his experience working on developing Advanced Driver Assistance Systems and his review of Honda's internal documents, including its specifications for the Honda Sensing System stating that "any false positives are considered unacceptable."  (*Id.* at 7–8).  *See Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) ("Expert opinion testimony . . . is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline.").

Honda seeks to exclude the testimony of Mr. Hoover, arguing that his opinion is unreliable.  (First *Daubert* Motion at 1).  Apart from the issues raised regarding the safety opinions in the Hoover Report, the Court is not persuaded by Honda's arguments, the most substantial of which the Court addresses in turn.

First, Honda contends that Mr. Hoover relies on insufficient facts or data because he relies on "a few Honda documents and a smattering of unverified

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

***REDACTED***

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                    Date:  June 24, 2024
Title:      Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

anecdotes." (*Id.* at 5–6). According to Honda, Mr. Hoover should have inspected the Vehicles and examined the software himself in forming his opinions. (*Id.* at 5). However, there is nothing prohibiting from Mr. Hoover from relying on Honda's documents and internal analysis. "An expert is of course permitted to testify to an opinion formed on the basis of information that is handed to rather than developed by him." *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1071 (C.D. Cal. 2015) (citing *Matter of James Wilson Assocs.*, 965 F.2d 160, 172–73 (7th Cir. 1992)). As such, "trained experts commonly extrapolate from existing data." *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Second, Honda argues that Mr. Hoover is unable to describe the defect, its cause, the remedy, or assert that any such defects are common to the class. (First *Daubert* Motion at 6–12). In so arguing, Honda relies on *Grodzitsky v. American Honda Motor Company, Inc.*, 957 F.3d 979 (9th Cir. 2020). There, the expert opined that a vehicle's component was defective because it was "not durable enough" and failed to "last the life of the vehicle." *Id.* at 985 (internal quotation marks omitted). The Ninth Circuit held that the expert's opinion was flawed for two reasons. *Id.* at 986. First, the opinion was premised on an "overly expansive standard for a design defect." *Id.* at 985. Second, in reaching his conclusion, the expert had provided "*no* scientific basis for his observation" and "entirely failed to cite industry standards, peer-reviewed literature, or even test a statistically significant number of regulators to opine on the probabilities that any given Honda Pilot regulator failed because of the alleged defect." *Id.* at 985–86 (internal quotations omitted) (emphasis added).

However, Honda's reliance on *Grodzitsky* is inapt. As an initial matter, unlike the expert in *Grodzitsky*, the Hoover Report sufficiently describes the defect. The Hoover Report explains that "[t]he defect is ███████████████████████████ ████████████████████████████████████████ (Hoover Report at 14). ██████████████████████████████████████

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

**Case No.  CV 18-4007-MWF (PJWx)                Date:  June 24, 2024**
Title:      Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

██████████████████████████ (*Id.* at 11–12).  The Hoover Report also narrowly defines "hard braking" as "████████████████████████" "in the absence of an imminent collision."  (*Id.* at 6, 8).  The alleged defect also implicates Honda's *software*, which necessarily affects all Vehicles that are equipped with CMBS, as opposed to the hardware defect in *Grodzitsky*.  Moreover, as Plaintiffs note, Mr. Hoover's expert report is not the only evidence of the alleged systemic defect.  (*See* Certification Reply at 9).  Unlike the alleged defect in *Grodzitsky*, Plaintiffs' contention that the Vehicles were designed to have ████████████████ is supported by ███████████████████████, ██████████, and Mr. Hoover's experience working on similar systems.

At the hearing, Honda took issue with Mr. Hoover's reliance on anecdotal statements from Honda customers.  According to Honda, these anecdotal statements are inherently flawed and subjective because customers do not have a common definition of "hard braking" and cannot determine whether a hard braking event was necessary.  But, as already discussed, Mr. Hoover does not solely rely on customer anecdotes.  Further, while Honda may raise these arguments to attack the weight of the evidence, they are not persuasive on the issue of whether Mr. Hoover's opinion is, at the very least, "useful in evaluating whether class certification requirements have been met."  *Lytle v. Nutramax Labs., Inc.*, 99 F.4th 557, 577 (9th Cir. 2024) (citation omitted).

Third, Honda contends that Mr. Hoover's opinion relies on mischaracterizations and selective use of its documents.  (First *Daubert* Motion at 12–13).  Again, these challenges primarily go to the weight that should be given to Mr. Hoover's testimony, and therefore, are not grounds for its exclusion.  *See City of Pomona*, 750 F.3d at 1044 ("Challenges that go to the weight of the evidence are within the province of a fact finder, not a trial court judge."); *Tortilla Factory, LLC v. GT's Living Foods, Inc.*, No. CV 17-7539-FMO (GJSx), 2022 WL 3134458, at *6 (C.D. Cal. June 9, 2022)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

Case No.  **CV 18-4007-MWF (PJWx)**                    Date:  **June 24, 2024**

Title:       Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

("[F]aults in [the] use of a particular methodology . . . go to the weight, not the admissibility, of [an expert's] testimony.") (citation omitted)); *Moghaddam v. Jaguar Land Rover N. Am., LLC*, No. CV 17-3716-MWF (AJWx), 2018 WL 6003579, at *9 (C.D. Cal. Sept. 19, 2018) ("To the extent Defendant[s] believe [the expert] failed to consider all relevant information . . . Defendant[s] may elicit such weaknesses during cross-examination.").

        In response, Honda argues that Rule 702 was recently amended "to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth" under Rule 104(a).  Fed. R. Evid. 702 advisory committee's note to 2023 amendment.  This was done "to correct some court decisions incorrectly holding that the critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility."  *In re Onglyza (Saxagliptin) & Kombiglyze (Saxagliptin & Metformin) Prod. Liab. Litig.*, 93 F.4th 339, 348 n.7 (6th Cir. 2024).  But "[n]othing in the amendment imposes any new, specific procedures.  Rather, the amendment is simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702."  *Id.*  As such, "once the court has found it more likely than not that the admissibility requirement has been met, any attack by the opponent will go only to the weight of the evidence." *Id.*

        Fourth, and most convincingly, Honda argues that Mr. Hoover's opinions regarding safety were not disclosed in his expert report and are speculative.  (First *Daubert* Motion at 16–18).  When a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless."  *R&R Rails, Inc. v. Ins.*

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                    Date:  June 24, 2024
Title:        Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

*Co. of Pa.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citation omitted).  The Court agrees on this point, as Mr. Hoover's report makes no finding as to the safety consequences of the defective CMBS nor do Plaintiffs squarely address Honda's argument regarding disclosure in their reply.

Accordingly, the First *Daubert* Motion is **GRANTED** with respect to Mr. Hoover's opinions on the safety implications of the alleged defects but is otherwise **DENIED**.

### B.    J. Michael Dennis and Colin Weir

Plaintiffs retained experts J. Michael Dennis and Colin Weir on the issue of damages.  (*See* Expert Report of J. Michael Dennis ("Dennis Report") (Docket No. 193-6); Expert Report of Colin Weir ("Weir Report") (Docket No. 193-7)).  Specifically, Dr. Dennis and Mr. Weir were instructed to: (1) "evaluate whether it would be feasible to devise a method for conducting a market research study that can be used to reliably evaluate the importance of the Defect to reasonable consumers as well as to measure whether and to what extent class members overpaid for Class Vehicles in light of the Defect"; (2) design, execute, and report on a research project that relies on generally accepted methodologies for providing the Court information needed to assess the importance of the Defect to reasonable consumers and the extent to which the Proposed Classes were harmed due to overpayment for vehicles containing the Defect"; (3) to measure the overpayment for the Vehicles attributable to the defect.  (Dennis Report ¶¶ 19, 21; Weir Report ¶ 7).

Together, Dr. Dennis and Mr. Weir developed a survey to calculate the importance of the alleged defect to reasonable consumers and the reduction in market value of the Vehicle due to the defect.  (Dennis Report ¶¶ 22–25; Weir Report ¶ 7).  Mr. Weir will be responsible for the economic analysis and price premium calculation based on the survey results.  This damages model is known as a "conjoint analysis."  In essence, "the survey works by asking consumers questions that cause them to make

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

**Case No.  CV 18-4007-MWF (PJWx)           Date:  June 24, 2024**
Title:       Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

tradeoffs between different features in a product, or with different information about the product."  *Johnson v. Nissan N. Am., Inc.*, No. 3:17-CV-00517-WHO, 2022 WL 2869528, at \*5 (N.D. Cal. July 21, 2022).  "Then, using statistical comparisons, the value of a particular feature (or lack thereof) can be derived."  *Id.*  While the conjoint analysis has been fully designed by Plaintiffs' experts, it has not yet actually been conducted.  (Dennis Report ¶ 63).

        The crux of the Court's inquiry is whether the proposed survey is sufficiently reliable under *Daubert*.  Surveys are admissible if they are relevant, conducted according to accepted principles, and set upon a proper foundation for admissibility.  *See Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1263 (9th Cir. 2001).  As long as surveys "'are conducted according to accepted principles,' survey evidence should ordinarily be found sufficiently reliable under [*Daubert*]."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir. 1997) (internal quotation marks omitted).  The proponent bears the burden of showing "that the survey was conducted in accordance with generally accepted survey principles and that the results were used in a statistically correct manner."  *Keith v. Volpe*, 858 F.2d 467, 480 (9th Cir. 1988).

        Here, the Court concludes that the damages analysis is sufficiently reliable for purposes of evaluating the Certification Motion.  Both experts sufficiently discuss their methodology, which appears to adhere to scientifically accepted principles in similar consumer protection cases.  (*See* Dennis Report ¶¶ 28–118; Weir Report ¶¶ 13–59).  Dr. Dennis avers that conjoint analyses are "widely accepted by courts as being capable of measuring the overpayment associated with challenged labeling representations in false advertising class actions."  (Dennis Report ¶ 64 (citing cases)).  Courts have confirmed this view, recognizing that conjoint analyses "are now a 'well-recognized economic method used to study and quantify consumer preferences."  *Id.* (citing *In re: MacBook Keyboard Litig.*, No. CV 18-02813-EJD, 2021 WL 1250378, at \*5 (N.D. Cal. Apr. 5, 2021)); *see also Lytle*, 99 F.4th at 579 (recognizing that "conjoint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)              Date:  June 24, 2024
Title:        Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

analysis is a well-accepted economic methodology" (citation omitted)).  Indeed, several courts – including this Court – have accepted Mr. Weir's conjoint analyses in class action consumer protection cases.  *See, e.g.*, *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 573–77 (N.D. Cal. 2020); *Gunaratna v. Dennis Gross Cosmetology LLC*, No. CV 20-2311-MWF (GJSx), 2023 WL 2628620, at *18–20 (C.D. Cal. Mar. 15, 2023)

Honda argues that the Court should exclude the proposed damages model by Dr. Dennis and Mr. Weir and disputes its reliability on five grounds.  Specifically, Honda argues that the conjoint survey is flawed because (1) it has not actually been performed; (2) it does not sufficiently account for supply-side factors; (3) it contains various methodological errors; (4) it cannot accurately simulate a vehicle-buying experience; and (5) it does not employ real-life data.  (Second *Daubert* Motion at 1–2).

*Unperformed Survey*: Honda argues that the proposed conjoint survey is unreliable because it has not yet been executed.  (*Id.* at 6–9).  But the Ninth Circuit recently rejected this very argument because "class actions are not required to actually prove their case through common proof at the class certification stage.  Rather, plaintiffs must show that they will be able to prove their case through common proof ***at trial***."  *Lytle*, 99 F.4th at 570 (emphasis in original).  Therefore, contrary to Honda's assertions, "class action plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial."  *Id.*

*Supply-Side Considerations*: Honda also argues that Plaintiffs' damages model fails to look at supply-side considerations in three ways.  First, Honda contends that there is no evidence that Honda dealers would have changed the sales price even if warnings about the alleged defect had been provided.  (*Id.* at 10–11).  Second, Honda argues that the experts' reliance on the manufacturer's suggested retail price ("MSRP") is erroneous "because it is not the price generally paid" by consumers.  (*Id.* at 11).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                Date:  June 24, 2024
Title:        Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

Third, even assuming the MSRP is the proper price, Honda contends that Mr. Dennis did not rely on the actual MSRP of Honda vehicles.  (*Id.* at 4–5, 12).

However, all of these arguments go to the weight, not the admissibility, of the proposed survey and is therefore not a basis for the Court to exclude Plaintiffs' damages model.  *See, e.g.*, *MacDougall v. Am. Honda Motor Co., Inc.*, No. 20-56060, 2021 WL 6101256, at *1 (9th Cir. Dec. 21, 2021) (unpublished) (reversing the district court's exclusion of an expert report because Honda's challenges regarding the survey's absence of market considerations, specific attribute selection, and the use of averages "go to the weight given the survey").  As such, Honda can raise these issues on cross-examination.

***Methodological Errors***: Next, Honda argues that the conjoint survey is "rife with other methodological errors," including "an incomplete and inaccurate range of choices and risks," improper survey population, and an exaggeration of the weight consumers would give to the disclosure of the defect in real-life purchase decisions. (*Id.* at 13–16).  Again, these purported flaws go only to the weight of the evidence and not the admissibility.  *See Clicks,* 251 F.3d at 1263 ("[I]ssues of . . .  survey design . . . go to the weight of the survey rather than its admissibility").

***Inaccurate Simulation***: Honda further contends that conjoint surveys "are particularly ill-suited for simulating real-world automobile purchasing decisions."  (*Id.* at 16–18).  In so arguing, Honda argues that there neither Dr. Dennis nor Mr. Weir point to any academic studies showing the reliability of conjoint analysis in the context of pricing vehicle purchase, which are inherently complex.  (*Id.* at 16–17).

However, this argument is clearly contradicted by caselaw.  *See, e.g.*, *Johnson*, 2022 WL 2869528, at *5 (accepting a conjoint analysis in the context of defective automobile case); *Banh v. Am. Honda Motor Co.*, No. CV 19-05984-RGK (ASx), 2020 WL 4390371, at *18–19 (C.D. Cal. Jul. 28, 2020) (same); *MacDougall v. Am. Honda Motor Co. Inc.*, No. SACV 17-1079 JGB (DFMx), 2023 WL 9687349, at *14 (C.D.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                Date:  June 24, 2024
Title:       Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

Cal. Oct. 3, 2023) (same); *Braverman v. BMW of N. Am., LLC*, No. SACV 16-00966-TJH (SSx), 2020 WL 6532874, at *1 (C.D. Cal. May 19, 2020) (same).  Moreover, as one district court has noted, the "the point of the conjoint analysis is to take into account a multitude of factors then determine the value difference between the product with and without the revealed information, all else held equal." *Johnson*, 2022 WL 2869528, at *9.

   ***Real-Life Data***: Finally, Honda faults Plaintiffs' experts for relying on a damages model rather than using available real-life data.  (*Id.* at 18).  But in so arguing, Honda fails to provide any authority requiring Plaintiffs to rely on real-life data instead of their proposed damages model.  In fact, as already discussed, Plaintiffs' use of conjoint surveys is fairly accepted in the world of consumer protection cases.

   Accordingly, the Second *Daubert* Motion is **DENIED**.

## IV.   CLASS CERTIFICATION

   "Federal Rule of Civil Procedure 23 governs the maintenance of class actions in federal court." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1124 (9th Cir. 2017).  To obtain class certification, the putative lead plaintiffs must "satisfy each of the four requirements of Rule 23(a) — numerosity, commonality, typicality, and adequacy — and at least one of the requirements of Rule 23(b)." *Id.* (citing *Ellis*, 657 F.3d at 979–80).  The party seeking class certification bears the burden of establishing by a preponderance of the evidence that the requirements of Rules 23(a) and 23(b) have been met.  *Olean Wholesale*, 31 F.4th at 665.  "Courts must perform a 'rigorous analysis'" of Rule 23(a)'s requirements before concluding that class certification is appropriate.  *Alcantar v. Hobart Serv.*, 800 F.3d 1047, 1052 (9th Cir. 2015) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011)).

   Plaintiffs request to be tried on a class-wide basis on their eight claims for violation of seven states' consumer protection statutes (under California, Florida, New

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

**Case No.**  CV 18-4007-MWF (PJWx)              **Date:**  June 24, 2024
**Title:**      Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

York, North Carolina, New Jersey, Arizona, and Iowa law), four claims for breach of implied warranty (under California, Ohio, New Jersey, and Iowa law), one state claim for negligent design (under Ohio law), and one state claim for unjust enrichment (under Massachusetts law).  Plaintiffs seek to certify the following nine proposed classes (the "Proposed Classes") under Rule 23(b)(3):

1. **California Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in California.

2. **Florida Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in Florida.

3. **New York Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in New York.

4. **Ohio Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in Ohio.

5. **North Carolina Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in North Carolina.

6. **New Jersey Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in New Jersey.

7. **Arizona Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in Arizona.

8. **Massachusetts Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in Massachusetts.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                Date:  June 24, 2024
Title:        Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

9. **Iowa Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in Iowa.

(Certification Motion at 1–2).  Plaintiffs request that the term "Class Vehicle" be defined as "any model year 2017–2019 Honda CR-V or model year 2018–2020 Honda Accord, excluding vehicles designated as 'Fleet' orders" in Honda's sales data.  (*Id.* at 2).

A.    <u>Rule 23(a) Factors</u>

Defendant does not dispute that the Proposed Classes are sufficiently numerous or that the representative parties will adequately protect the interests of the class.  Rather, Honda's focuses on commonality and typicality.  Therefore, the Court focuses the bulk of its analysis on the disputed factors.

1. **Numerosity**

Under Rule 23(a)(1), a class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  Here, Plaintiffs present evidence that the Proposed Classes each consist of at least tens of thousands of members.   (Declaration of David Stein ("Stein Decl.") (Docket No. 194-2) ¶ 5).  The Court thus concludes that numerosity is met.  *See Immigrant Assistance Project of L.A. Cnty. Fed'n of Lab. (AFL-CIO) v. I.N.S.*, 306 F.3d 842, 869 (9th Cir. 2002) (noting that "to find the numerosity requirement . . . satisfied solely on the basis of the number of ascertained class members, i.e., 39, 64, and 71," and listing thirteen cases in which courts certified classes with fewer than 100 members (citation omitted)).

2. **Commonality**

Rule 23(a)(2) requires that the case present "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  The Supreme Court's decision in *Dukes* clarified

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                  Date:  June 24, 2024

Title:       Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

that to demonstrate commonality, the putative class must show that their claims "depend upon a common contention . . . that it is capable of class[-]wide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  564 U.S. at 350.  "[F]or purposes of Rule 23(a)(2), even a single common question will do."  *Id.* at 359 (cleaned up).

Here, Plaintiffs contend that the alleged defect – the improper design of CMBS's software that results in hard braking in the absence of an imminent collision – is common to the Proposed Classes.  (Certification Motion at 15).  Therefore, according to Plaintiffs, this action raises several issues that are common to the Proposed Classes, including (1) whether the alleged defect exists; (2) whether Honda failed to disclose the defect; and (3) whether this information is material.  (*Id.* at 16).  The Court concludes that these issues are sufficient to raise several common questions with respect to the Proposed Classes.  Indeed, "[i]n automobile defect cases, commonality is often found when the most significant question concerns the existence of a defect." *Philips v. Ford Motor Co.*, 2016 WL 7428810, at \*7 (N.D. Cal. Dec. 22, 2016) (citing *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008)).

Honda disputes this contention, arguing that Plaintiffs' failure to identify the alleged defect makes it impossible to determine whether defect is capable of common proof.  (Certification Opp. at 17–20).  Again, Honda relies on *Grodzitsky*, where the Ninth Circuit found that the plaintiffs failed to demonstrate commonality because the expert's opinion was unreliable and "the remaining evidence consisted solely of highly individualized complaints."  957 F.3d at 987.  However, as already discussed, the Court finds the Hoover Report sufficiently reliable and descriptive of the alleged defect.  The alleged defect in this case is also distinct because it targets Honda's software, which necessarily affects all Vehicles that are equipped with CMBS. Moreover, as Plaintiffs note, Mr. Hoover's expert report is not the only evidence of the alleged systemic defect.  (*See* Certification Reply at 9).  Indeed, ▮▮▮▮▮▮▮

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                Date:  June 24, 2024
Title:      Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮ provide common proof in support of Plaintiffs'
claims.  (*See* Certification Motion at 18–19).

At the hearing, Honda argued that, without Mr. Hoover's expert opinion related
to safety, Plaintiffs cannot demonstrate that the alleged defect is material.  However, as
the Court noted, Plaintiffs need not rely on Mr. Hoover's opinion to trigger Honda's
duty to disclose.  In states like California, "materiality is governed by an objective
'reasonable person' standard . . . an inquiry that is the same for every class member."
*Edwards v. Ford Motor Co.*, 603 F. App'x 538, 541 (9th Cir. 2015) (unpublished)
(citing *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 119 Cal.
Rptr. 2d 190 (2002)); *see also Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168,
1175 (9th Cir. 2010) (reversing the district court's denial of class certification, in part,
because the issue of whether the defendant "failed to reveal material facts in violation
of consumer protection laws" were "susceptible to proof by generalized evidence").
The Court also "declines Honda's invitation to treat this as a motion for summary
judgment" by requiring Plaintiffs to provide evidence of the safety issue at the class
certification stage.  *Aberin v. Am. Honda Motor Co.*, No. 16-cv-04384-JST, 2021 WL
1320773, at *10 (N.D. Cal. Mar. 23, 2021).

Accordingly, the Court concludes that the commonality requirement is met.

### 3.  Typicality

Rule 23(a)(3) requires the putative class to show that "the claims or defenses of
the representative parties are typical of the claims or defenses of the class."  Fed. R.
Civ. P. 23(a)(3).  "The test of typicality is 'whether other members [of the class] have
the same or similar injury, whether the action is based on conduct which is not unique
to the named plaintiffs, and whether other class members have been injured by the
same course of conduct.'"  *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)
(citation omitted).  Typicality is satisfied "when each class member's claim arises from
the same course of events, and each class member makes similar legal arguments to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)               Date:  June 24, 2024

Title:       Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

prove the defendant's liability."  *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (citation omitted).

Plaintiffs argue that their claims "arise from a common course of conduct" with respect to their failure to disclose the systemic design defect.  (Certification Motion at 26).  Additionally, Plaintiffs allege that each member of the Proposed Classes suffered the same injury by paying more for their vehicle than they otherwise would have paid.  (*Id.*).  The Court agrees that typicality is met since Plaintiffs and the Proposed Classes seek to recover damages pursuant to the same legal theories – violation of consumer protection laws, breach of implied warranty, negligent design, and unjust enrichment – for a design defect in the CMBS.   Plaintiffs' claims are thus "reasonably coextensive with those of absent class members" because they allege that Honda "committed the same overall course of misconduct against other members of the class."  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1117 (9th Cir. 2017).  In other words, Plaintiffs' claims are typical because they share "some common question of law and fact with class members' claims."  Newberg on Class Actions § 3:31 (6th ed. 2023).

In opposition, Honda argues that claims brought by four of the Plaintiffs are atypical and subject to unique defenses.  Indeed, "class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted).  The Court addresses Honda's arguments in turn:

***Plaintiff Matthew Villanueva (CA)***: Honda first contends that Plaintiff Matthew Villanueva's claims are atypical because does not qualify as a "consumer" under California's Consumer Legal Remedies Act (the "CLRA").  (Certification Opp. at 31).  In so arguing, Honda points to Plaintiff Villanueva's deposition testimony, which revealed that his father was the signatory on the sales contract for his vehicle.  (*See* Docket No. 214-6 at 30–31).  But the Court is unpersuaded because the sole authority on which Honda relies is unpublished and non-citable.  *See Vega v. Carmax Auto Superstores Cal., LLC*, No. B278249, 2018 WL 3216347 (Cal. App. July 2, 2018)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                Date:  June 24, 2024
Title:       Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

(unpublished).  Moreover, as Plaintiffs note, Plaintiff Villanueva testified during that same deposition that he was the one who "visited the dealership, selected the vehicle, paid for it, ***and is listed on the title***."  (Certification Reply at 20 (emphasis added); *see also* Docket No. 214-6 at 31–32).  As such, the Court finds this case sufficiently distinguishable from *Vega*, at least with the evidence presented to the Court at this stage of the proceedings.  *See* Cal. Civ. Code § 1761(d) (defining "consumer" as an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes").

Honda also suggests that, unlike other Plaintiffs and members of the Proposed Classes, Plaintiff Villanueva has unique knowledge about the alleged defect because he is a car salesman for Kia.  (*Id.*).  Even if such knowledge was somehow relevant, it is incredibly unlikely that Plaintiff Villanueva's purported knowledge of ***Kia*** vehicles as a car salesman will become the focus of this litigation regarding design defects in the software of ***Honda*** vehicles.

***Plaintiff Roxana Cardenas (CA)***: Honda argues that Plaintiff Cardenas is not typical of the Proposed Classes because she purchased her vehicle through a broker and therefore never interacted with a Honda-authorized dealer.  (*Id.*).  However, this argument is contradicted by Plaintiff Cardenas' deposition testimony that, despite her use of an auto broker, she visited a Honda dealership and test drove vehicles herself prior to her purchase.  (*See* Docket No. 236-6).

***Plaintiff Ann Hensley (NC)***: Honda contends that Plaintiff Hensley's claims are not typical because she experienced issues unrelated to the design defect underlying this action.  (*Id.* at 32).  This argument is unpersuasive as it goes to the merits and wholly disputes Plaintiff Hensley's allegations that she was injured by the design defect in the CMBS.  *See Wolin*, 617 F.3d at 1175 (rejecting a similar argument that the plaintiff's claims were atypical).  Additionally, "[t]ypicality can be satisfied despite different factual circumstances surrounding the manifestation of the defect."  *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                    Date:  June 24, 2024
Title:        Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

Honda also argues that Plaintiff Hensley's vehicle was not "new" because it had 5,500 miles on it at the time of purchase.  (*Id.*).  However, because there is no citation to the record to support this assertion, the Court declines to consider it.

***Plaintiff James Watson (NY)***: Finally, Honda contends that Plaintiff Watson is not typical because he never personally experienced the alleged defect and could only testify to what his wife had told him.  (*Id.*).  As such, according to Honda, Plaintiff Watson cannot offer admissible evidence regarding the alleged defects in his car.  However, so long as the alleged defect existed in his vehicle at the time of purchase, Plaintiff Watson "may have a viable claim regardless of the manifestation of the defect."  *Wolin*, 617 F.3d at 1175.

Accordingly, the typicality requirement is satisfied.

### 4.  Adequacy

Rule 23(a)(4) requires the representative parties to "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4)*.*  "In making this determination, courts must consider two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998)).

Plaintiffs allege that they will fairly and adequately represent and protect the interests of the Proposed Classes, and that they have retained counsel competent and experienced in complex class action litigation and who will prosecute this action vigorously on behalf of the Proposed Classes.  (Consolidated Amended Complaint (Docket No. 94) ¶ 142).  Plaintiffs also contend that neither Plaintiffs nor their counsel have any interest adverse to the Proposed Classes.  (Certification Motion at 27).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

Case No. CV 18-4007-MWF (PJWx)         Date:  June 24, 2024
Title:      Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

Interim Class Counsel, Gibbs Law Group and Greenstone Law PAC, are adequate counsel for the Proposed Classes.  These firms have regularly engaged in multi-state class action litigation, and the attorneys involved in this litigation have extensive experience and have been appointed lead Class counsel in similar consumer class action lawsuits.  (Stein Decl. ¶ 3, Exhibits 118, 119).

Accordingly, the adequacy requirement is satisfied.

Because all of the requirements imposed by Rule 23(a) are satisfied, the Court next considers whether the additional requirements of Rule 23(b)(3) are met.

**B.**      **Rule 23(b)(3) Factors**

Rule 23(b)(3) allows the Court to certify a class seeking class-wide monetary relief but only if the additional requirements of predominance and superiority are satisfied.  *See* Fed. R. Civ. P. 23(b)(3); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 615 (1997) (discussing relevance of "predominance" and "superiority" requirements of Rule 23(b)(3)).

**1. Predominance**

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods*, 521 U.S. at 623.  It involves similar questions as the commonality analysis, but it "is even more demanding than Rule 23(a)."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).  Predominance should be found when "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1022 (9th Cir. 1998) (internal citation omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)          Date:  June 24, 2024
Title:      Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

Honda challenges predominance, arguing that individual issues predominate as to the following claims: (a) implied warranty claims; (b) consumer protection claims; (c) unjust enrichment claims under Massachusetts law; (d) negligent design claims under Ohio law; and (e) damages.  (Certification Opp. at 22).

**a.  Implied Warranty Claims**

Plaintiffs assert that their breach of implied warranty claims under California, Ohio, New Jersey, and Iowa law raise common questions as to whether the unexpected braking defect renders the Vehicles unsuitable for the ordinary purposes for which automobiles are used.  (Certification Motion at 22–23).  According to Plaintiffs, this question can be answered through common proof because the law requires an objective, rather than subjective, inquiry.  (*Id.* at 23).

In response, Honda contends that Plaintiffs have failed to assert that every Plaintiff or member of the Proposed Classes experienced the alleged defect or that it is substantially likely to malfunction during the useful life of the product.  (Certification Opp. at 23).  However, the Ninth Circuit rejected a similar argument when it held that "proof of the manifestation of a defect is not a prerequisite to class certification." *Wolin*, 617 F.3d at 1173; *see also Keegan v. Am. Honda Motor Co.*, 284 F.R.D. 504, 536 (C.D. Cal. 2012) (applying *Wolin* and concluding that, at the class certification stage, the plaintiffs were not required to "adduce evidence that a defect is substantially certain to arise in all class vehicles during the vehicles' useful life").

With respect to the proposed Iowa Class, Honda argues that Plaintiffs fail to show the existence of the alleged defect with common proof.  (*Id.* at 25).  For reasons discussed above, Honda is mistaken.  Plaintiffs have shown that whether the CMBS was designed with "insufficient toughness against misrecognition of objects" is susceptible of common proof through Honda's own internal documents.  (*See* Certification Reply at 5–6 (internal quotation marks omitted)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)            Date:  June 24, 2024
Title:       Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

Accordingly, the Court concludes that predominance is met for Plaintiffs' implied warranty claims.

### b.  Consumer Protection Claims

Plaintiffs raise eight consumer protection claims under the statutory law of seven states: California (which has two consumer protection statutes), Florida, New York, North Carolina, New Jersey, Arizona, and Iowa. (Certification Motion at 19). Plaintiffs contend that, despite relying on the laws of different states, they all hinge on the following issues: (1) whether Honda failed to disclose the design defect; (2) whether the design defect would be considered material to a reasonable consumer; and (3) whether, as a result of the omission, consumers suffered damages. (*Id.* at 19–20). The Court concludes that these common issues predominate over individualized inquiries. *See Johnson*, 2022 WL 2869528, at *20 (explaining that state consumer law claims regarding defective design are suitable to common proof).

In response, Honda argues that the alleged systemic defect does not necessarily establish predominance as to causation, reliance, and materiality. (Certification Opp. at 25–28). In so arguing, Honda primarily relies on *Mazza v. American Honda Motor Company*, 666 F.3d 581 (9th Cir. 2012). In *Mazza*, the plaintiffs alleged that the defendant misrepresented and concealed material information regarding certain limitations in the CMBS in its advertisements. *Id.* at 587. The Ninth Circuit determined that the plaintiffs could not show predominance on the issue of reliance because it was "likely that many class members were never exposed to the allegedly misleading advertisements, insofar as advertising of the challenged system was very limited." *Id.* at 595. Additionally, the "advertising materials [did] not deny that limitations exist." *Id.* at 596.

Likewise, according to Honda, the Vehicle's user manual disclosed that CMBS may "misrecognize objects and apply brakes unexpectedly." (*Id.* at 27). Additionally, these "limitations" on the CMBS have been publicly disclosed elsewhere. (*Id.*).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                    Date:  June 24, 2024
Title:       Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

Honda thus contends that these disclosures prevent Plaintiffs from presuming reliance on their omission-based theory.

But Honda's reliance on *Mazza* is inapt.  As one district court determined, "the Court does not read *Mazza* to say that the disclosure of functional limitations is equivalent to the disclosure of a defect."  *Hamm v. Mercedes-Benz USA, LLC*, No. 5:16-cv-03370-EJD, 2023 WL 4186013, at \*5 (N.D. Cal. June 23, 2023) (noting that the district court had conflated an "omission of limitations theory with an omission of defect theory" in *Philips v. Ford Motor Co*., No. 14-cv-02989-LHK, 2016 WL 7428810 (N.D. Cal. Dec. 22, 2016)).  Here, unlike in *Mazza*, Plaintiffs' theory of the case is based on a failure to disclose the inherent defects – not limitations – in the CMBS.

Honda also argues that Plaintiffs "offer no survey or other evidence showing consumers in general would necessarily find the mere possibility of a false positive to be material."  (*Id.* at 27)  However, such a showing is not required at the certification stage; rather, as Honda is likely well aware, Plaintiffs only need to show that reliance **can** be resolved for all members of the class in a single adjudication.

Accordingly, the Court concludes that predominance is met for the consumer protection claims.

### c.  Massachusetts Unjust Enrichment Claim

Plaintiffs argue that common issues predominate their claim for unjust enrichment brought under Massachusetts law.  (Certification Motion at 24–25).  "To succeed in a claim for unjust enrichment, a plaintiff must show: '(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment of its value.'"  *Blake v. Prof'l Coin Grading Serv.*, 898 F. Supp. 2d 365, 390 (D. Mass. 2012) (citing *Mass. Eye &*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                Date:  June 24, 2024

Title:       Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

*Ear Infirmary v. QLT Phototherapeutics, Inc.*, 552 F.3d 47, 57 (1st Cir. 2009)).  Here, Plaintiffs' theory of the unjust enrichment claim is that Honda is "unfairly keeping their money" because it "knew but did not disclose that its vehicles suffer from a systemic design defect that causes them to slam on the brakes for no reason."  (*Id.*).

In response, Honda asserts that this claim requires several individualized determinations based on the unique circumstances of each member of the Massachusetts Class, such as what "whether a given class member was exposed to any omissions, whether that class member ever actually experienced any problems with his or her [breaking] system, and what [Honda] did in response to that class member's request for repair, if any."  *Cormier v. Carrier Corp.*, No. CV 18-07030-CAS (Ex) 2019 WL 1398903, at *5 (C.D. Cal. Mar. 25, 2019) (declining to certify the plaintiff's claim for unjust enrichment based on an omission theory under Massachusetts law).

Plaintiffs do not meaningfully respond to *Cormier* and instead suggest that "in an omissions case such as this, where [P]laintiffs contend that they and the class members purchased or leased their vehicles from an authorized dealer . . . the Ninth Circuit has found this to be sufficient to show that a class member would have been aware of a disclosure had it been made by the defendant's authorized dealer."  *Salas v. Toyota Motor Sales, U.S.A., Inc.*, No. CV 15-8629 FMO (Ex), 2019 WL 1940619, at *9 (C.D. Cal. Mar. 27, 2019) (citing *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1226 (9th Cir. 2015)).  The Court is not convinced that Plaintiffs' response addresses Honda's contention that individualized questions predominate Plaintiffs' unjust enrichment claims under **Massachusetts** law.

Accordingly, the Certification Motion is **DENIED** with respect to Plaintiffs' claims for unjust enrichment under Massachusetts law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

Case No.  **CV 18-4007-MWF (PJWx)**          Date:  **June 24, 2024**

Title:      Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

### d. Ohio Negligent Design Claim

Plaintiffs assert that common issues predominate each element of their claim for negligent design under Ohio law.  (Certification Motion at 23–24).  To prove this claim, Plaintiffs must show: (1) a duty to design against reasonably foreseeable hazards; (2) breach of that duty; and (3) injury proximately caused by the breach.  *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 853 (6th Cir. 2013).

Honda disputes this contention, arguing that the claim involves inherently individualized issues with respect to causation and damages.  (Certification Opp. at 29–30).  Based on the Court's view, Plaintiffs' negligent design claim is nearly identical to their various consumer protection claims.  Therefore, consistent with the Court's reasoning throughout this Order, the Court concludes that common issues predominate Plaintiffs' negligent design claim under Ohio law.

### e. Damages

As part of the predominance inquiry, the Supreme Court has held that plaintiffs must present a damages model that measures damages resulting from the particular injury on which the defendant's liability is premised.  *Comcast*, 569 U.S. at 36; *see also Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[P]laintiffs must be able to show that their damages stemmed from the defendant's actions that created the legal liability.").  Therefore, plaintiffs are required to put forth a method that attempts to calculate damages that are limited only to those caused by the allegedly unlawful conduct, and not some other conduct.  *See Comcast*, 569 U.S. at 35.

Here, the conjoint analysis offered by Plaintiffs' experts is sufficient to calculate damages on a class-wide basis if the jury were to find Honda liable.  As discussed above, the proposed damages model will allow Plaintiffs to calculate the difference between the Vehicle with and without disclosure of the alleged defect.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

* * * R E D A C T E D * * *

CIVIL MINUTES—GENERAL

Case No.  CV 18-4007-MWF (PJWx)                    Date:  June 24, 2024
Title:        Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

Honda argues that individual inquiries would predominate the issue of damages due to the flaws in the proposed damages discussed in the Second Daubert Motion. (*See* Certification Opp. at 30–31).  As such, those arguments are rejected for the same reasons underlying the Court's denial of the Second Daubert Motion.

Accordingly, the Court concludes that the issue of damages is susceptible to class-wide proof and will not lead to the predominance of individual issues.

## 2.  Superiority

Rule 23(b)(3) also requires that a class action be a superior method for resolving Plaintiffs' claims.  A class action may be superior "[w]here class[-]wide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).  It is also superior when "no realistic alternative" to a class action exists. *Id*. at 1234–35.  In deciding whether a class action would be a superior method for resolving the controversy, the Court considers factors including: (1) the class members' interest in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action.  Fed. R. Civ. P. 23(b)(3)(A)–(D).

Although there are a handful of pending cases with similar claims (*see* Certification Motion at 28), the remaining three factors weigh in favor of proceeding on a class basis:

Under the first factor, it is unlikely that the vast majority of individual members are interested in prosecuting separate actions.  Each putative class member's claim is likely too small to justify the cost or risk of litigation.  Thus, a class action is a more efficient means for each individual class member to pursue his or her claims. *See*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

**Case No.** CV 18-4007-MWF (PJWx)          **Date:** June 24, 2024
**Title:**      Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

*Wolin*, 617 F.3d at 1175 ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification.").

Under the third factor, concentrating the litigation in this Court would eliminate the risk of inconsistent adjudication and promote the fair and efficient use of the judicial system.   This is especially true given the potential number of class members that span across nine states and Plaintiffs' reliance on expert testimony, which would be wholly inefficient to replicate in each individual case.

Finally, under the fourth factor, the Court does not foresee any management difficulties that will preclude this action from being maintained as a class action.  In response, Honda contends that a class action would not be superior due to the size and complexities of a multi-state class action and Plaintiffs' failure to provide a trial plan. (Certification Opp. at 32).  However, as Honda concedes "[f]ederal law does not require a plaintiff to submit a trial plan during or immediately after the certification stage." *Stickles v. Atria Senior Living, Inc.*, No. C 20-9220 WHA, 2022 WL 718563, at \*1 (N.D. Cal. Mar. 10, 2022) (citing *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 n.4 (9th Cir. 2005)).  If it later becomes evident that a trial will be unmanageable, then Honda can move to decertify the class.

Accordingly, the superiority requirement is satisfied.

**V.     CONCLUSION**

For the foregoing reasons, the First *Daubert* Motion is **GRANTED** *in part* and **DENIED** *in part*.  The Second *Daubert* Motion is **DENIED**.

The Certification Motion is **DENIED** with respect to Plaintiffs' unjust enrichment claim under Massachusetts law but is otherwise **GRANTED**. Accordingly, the Court **CERTIFIES** the following classes:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**\* \* \* R E D A C T E D \* \* \***

CIVIL MINUTES—GENERAL

**Case No.** CV 18-4007-MWF (PJWx)          **Date:** June 24, 2024
Title:       Kathleen A. Cadena, et al. v. American Honda Motor Co., Inc.

1. **California Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in California.

2. **Florida Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in Florida.

3. **New York Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in New York.

4. **Ohio Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in Ohio.

5. **North Carolina Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in North Carolina.

6. **New Jersey Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in New Jersey.

7. **Arizona Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in Arizona.

8. **Massachusetts Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in Massachusetts.

9. **Iowa Class**: All persons who purchased a new Class Vehicle from a Honda-authorized dealership in Iowa.

"Class Vehicle" is defined as any model year 2017–2019 Honda CR-V or model year 2018–2020 Honda Accord, excluding vehicles designated as 'Fleet' orders in Honda's sales data.

IT IS SO ORDERED.