1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHLEEN CADENA, *et al.*,<br><br>    Plaintiffs,<br><br>  v.<br><br>AMERICAN HONDA MOTOR COMPANY, INC.,<br><br>    Defendant. | Case No. 2:18-cv-04007-MWF-MAA<br><br>**[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER**<br><br>Judge: Hon. Michael Fitzgerald<br>Courtroom: 5A<br>Trial Date: March 17, 2026<br>Pretrial Conference: February 23, 2026<br>Time: 11:00am |

Following pretrial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

1.     The parties are:

Plaintiffs include James Adams, Roxana Cardenas, Craig DuTremble, Larry Fain, Ruth Ann Hensley, Vincent Liem, Susan McGrath, Robert Morse, and Peter Watson. The Defendant is American Honda Motor Co., Inc. ("Honda").

Each of these parties has been served and has appeared. All other parties named in the pleadings and not identified in the preceding paragraph are now dismissed.

The pleadings which raise the issues are: Consolidated Complaint (ECF No. 191) and Answer to Consolidated Complaint (ECF No. 200).

2.     Federal jurisdiction and venue are invoked upon the grounds: Pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and Honda are citizens of different states. Venue is proper in this District pursuant 28 U.S.C. § 1391(b) because Honda resides in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. The Parties agree there is federal jurisdiction and that venue is proper.

3.     The trial is estimated to take 40 hours (8 trial days) plus time for jury deliberation. The Parties agree to divide the 40 hours equally for presentation of evidence, including opening statements, closing statements, direct examinations, and cross-examinations.

4.     The trial is to be a jury trial.

The parties filed and served proposed jury instructions and proposed special voir dire questions as required by L.R. 51-1 on February 9, 2026. The parties

2

reserve their right to propose modifications as appropriate.

5.    The following facts are admitted and require no proof:

(1) American Honda Motor Company, Inc. ("AHM") is a California corporation headquartered in Torrance, California;

(2) AHM is the exclusive distributor of Honda vehicles in the United States;

(3) The "Class Vehicles" in this case are new 2017-2019 Honda CR-Vs and 2018-2020 Honda Accords equipped with an Advanced Driver Assistance System;

(4) Defendant American Honda Motor Company, Inc. ("Honda") distributed, marketed and provided a new vehicle limited warranty on the Class Vehicles in the United States;

(5) The Bosch system installed in the Class Vehicles includes an automatic emergency braking system which Honda calls the Collision Mitigation Braking System ("CMBS"); and,

(6) Each of the Plaintiffs is the original purchaser of a new Class Vehicle from a Honda-authorized dealership.

6.    The following facts, though stipulated, shall be without prejudice to any evidentiary objection: None.

7.    Claims and Defenses:

**Plaintiffs**:

(a)    Plaintiffs plan to pursue the following claims against Honda:

- **Claim 1**: With respect to the California Class, Honda breached the California implied warranty of merchantability under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792.
- **Claim 2**: With respect to the Ohio Class, Honda breached the Ohio implied warranty of merchantability.
- **Claim 3**: With respect to the Ohio Class, Honda is liable for negligent design under Ohio law.

3

- **Claim 4**: With respect to the New Jersey Class, Honda breached the New Jersey implied warranty of merchantability, N.J.S.A. 12A:2-314.
- **Claim 5**: With respect to the California Class, Honda violated the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*
- **Claim 6**: With respect to the New York Class, Honda violated the New York Deceptive Acts and Practices Law.  N.Y. Gen. Bus. Law Section 349.
- **Claim 7**: With respect to the Florida Class, Honda violated the Florida Deceptive and Unfair Trade Practices Act, F.S.A. §§ 501.201-510.213.
- **Claim 8**: With respect to the North Carolina Class, Honda violated the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1.
- **Claim 9**: With respect to the New Jersey Class, Honda violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.*
- **Claim 10**: With respect to the Arizona Class, Honda violated the Arizona Consumer Fraud Act, A.R.S. § 44-152.
- **Claim 11**:  With respect to the Iowa Class, Honda violated the Iowa Consumer Frauds Act, I.C.A. § 714.16.

(b)     The elements required to establish Plaintiffs' claims are:

**Claim 1:** California Breach of Implied Warranty of Merchantability under the Song-Beverly Consumer Warranty Act:

1.     The Class Vehicles were not fit for the ordinary purposes for which the vehicles are used; and

2.     The California Class members were harmed as a result.

**Claim 2:** Ohio Breach of Implied Warranty of Merchantability:

1.     A defect existed in Class Vehicles that made them unfit for their ordinary, intended use;

2.     The defect existed at the time the Class Vehicles left Honda's control; and

3.     The Ohio Class members suffered economic loss as a result.

4

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

**Claim 3:** Ohio Negligent Design:

     1.     Honda failed to design Class Vehicles against reasonably foreseeable hazards; and

     2.     The Ohio Class members suffered damages proximately caused by Honda's design failure.

**Claim 4:** New Jersey Breach of Implied Warranty of Merchantability:

     1.     The Class Vehicles were not fit for their ordinary purpose at the time of sale; and

     2.     The New Jersey Class members suffered loss or harm as a result.

**Claim 5:** California Consumers Legal Remedies Act:

     1.     Honda either (a) actively concealed a material fact about Class Vehicles or (b) failed to disclose a material fact about Class Vehicles that California Class members did not know and which would have been difficult for them to discover;

     2.     The California Class members were harmed; and

     3.     The California Class members' harm resulted from Honda's conduct.

**Claim 6:** Florida Deceptive and Unfair Trade Practices Act:

     1.     Honda engaged in a deceptive act or practice; and

     2.     Honda's actions were the legal cause of actual damage sustained by the Florida Class members.

**Claim 7:** New York General Business Law Section 349:

     1.     Honda engaged in an act or practice that is deceptive or misleading in a material way;

     2.     The New York Class members suffered detriment or injury as a result; and

     3.     Honda's business practice was aimed at the consumer public at large.

**Claim 8:** North Carolina Unfair and Deceptive Trade Practices Act:

     1.     Honda failed to disclose the existence of a defect in Class Vehicles;

     2.     The defect in Class Vehicles was material; and

3.      Honda's failure to disclose was a proximate cause of North Carolina Class members' injury.

**Claim 9:** New Jersey Consumer Fraud Act:

1.      Honda knowingly concealed or did not mention an important or significant fact about Class Vehicles;

2.      Honda intended that the New Jersey Class members would rely on that concealment or what it did not mention in connection with their purchase of Class Vehicles; and

3.      The New Jersey Class members lost money as a result.

**Claim 10:** Arizona Consumer Fraud Act:

1.      Honda concealed or omitted a material fact about Class Vehicles and intended that others would rely on that concealment or omission of fact;

2.      Honda did so in connection with the sale or advertisement of Class Vehicles; and

3.      The Arizona Class members suffered damages as a result of reliance on the concealment or omission of fact.

**Claim 11:** Iowa Consumer Frauds Act:

1.      Honda engaged in an act or practice that it knew or reasonably should have known was deceptive or which involved the concealment or omission of a material fact about Class Vehicles;

2.      Honda intended that the Iowa Class members would rely on its deception, concealment, or omission of fact; and

3.      The Iowa Class members lost money as a result.

 Defendants' Statement of Required Elements

**Claim 1:** California Breach of Implied Warranty of Merchantability under the Song-Beverly Consumer Warranty Act:

1.      AHM was the manufacturer or retail seller of the Class Vehicles;

2.      Cardenas and California Class Members bought a new Class Vehicle;

6

3.      Cardenas and California Class Members bought their Class Vehicles primarily for personal, family, or household purposes;

4.      At the time of purchase or lease, each Class Vehicle was covered by an implied warranty of merchantability AHM had not disclaimed;

5.      Class Vehicles were not fit at the time of sale for the ordinary purpose of providing transportation due to the Alleged Defect; and

6.      AHM's breach of the implied warranty was a substantial factor in causing Cardenas's and California Class Members' harm.

**Claim 2:** Ohio Breach of Implied Warranty of Merchantability:

1.      Liem and every Class Member bought Class Vehicles directly from AHM;

2.      There was a defect in the Class Vehicle manufactured and sold by AHM;

3.      Such defect existed at the time the Class Vehicle left the hands of AHM;

4.      The defect was the direct and proximate cause of Liem's and the Ohio Class Members' injuries or loss.

**Claim 3:** Ohio Negligent Design:

1.      AHM owed a legal duty of care to Liem and the Ohio Class Members to design the Class Vehicles in a way is not unreasonably dangerous to the user or consumer;

2.      AHM breached that duty by failing to design the Class Vehicle to eliminate any and all possibilities of the Collision Mitigation Braking System falsely identifying an everyday object as an imminent collision threat and applying the vehicle's brakes at a force of greater than 2.5 meters per second squared;

3.      Liem and the Ohio Class Members' injuries were proximately caused by AHM's breach; and

4.      Liem and the Ohio Class Members suffered personal injury or damage to property other than the Class Vehicles.

**Claim 4:** New Jersey Breach of Implied Warranty of Merchantability:

7

1.     AHM is a merchant and is in the business of selling goods of the kind involved.

2.     The Class Vehicles were not "merchantable" at the time of sale.

3.     McGrath and the New Jersey Class Members suffered injury, loss, or harm.

4.     The injury, loss, or harm to McGrath and the New Jersey Class Members was proximately caused by the defective nature of the Class Vehicles; and

5.     Notice was given to AHM of the injury, loss, or harm.

**Claim 5:** California Consumers Legal Remedies Act:

1.     Cardenas and the California Class Members were the actual buyers of a Class Vehicle for personal, family, or household purposes from an authorized AHM dealership;

2.     The Alleged Defect is present in Cardenas's and every California Class Members' Class Vehicle;

3.     The Alleged Defect causes an unreasonable safety hazard;

4.     Prior to Cardenas's and the California Class Members' purchase of their Class Vehicles, AHM had exclusive knowledge of the Alleged Defect and it constituted an unreasonable safety hazard;

5.     AHM had a duty to disclose the Alleged Defect;

6.     AHM failed to disclose the Alleged Defect to any Class Member despite that duty;[1]

7.     Each Plaintiff commenced this action not more than three years after the date AHM could have, but failed to, disclose the Alleged Defect no later than the date that Plaintiff or any California Class Member purchased their Class Vehicle;

---

[1] By submitting elements regarding the CLRA claim, AHM does not intend to waive its argument that a "failure to disclose" is not actionable under the CLRA. *See, e.g., Capito v. San Jose Healthcare Sys., LP*, 17 Cal. 5th 273, 289 (2024) (recognizing, but declining to resolve, the "dispute whether a failure to disclose is actionable under the CLRA").

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

8.  Had AHM disclosed the Alleged Defect, all California Class Members:

    a.  Would have been aware of the disclosure; and

    b.  Would not have bought the Class Vehicle, or would have paid less; and

9.  AHM's conduct caused Cardenas's and the California Class Members' harm.

**Claim 6:** Florida Deceptive and Unfair Trade Practices Act:

1.  Every Florida Class Vehicle has the Alleged Defect;

2.  AHM knew about the Alleged Defect on or before the first sale or lease of every Class Vehicle;

3.  AHM engaged in a deceptive or unfair act or practice toward Adams and the Florida Class Members by failing to disclose material information about the Alleged Defect;

4.  The alleged omission was material to the transaction; and

    a.  Adams and the Florida Class Members had a right to know about the existence of the Alleged Defect because a fiduciary or other relation of trust or confidence existed between them and AHM; or

    b.  AHM employed a trick of some kind to prevent Adams and the Florida Class Members from making further independent inquiry to discover the nature and existence of the Alleged Defect;

5.  Adams and all Florida Class Members sustained actual damages; and

6.  AHM's deceptive or unfair act was the legal cause of the actual damages.

**Claim 7:** New York General Business Law Section 349:

1.  AHM had exclusive knowledge of the Alleged Defect;

2.  AHM failed to disclose the Alleged Defect;

3.  AHM's omission of the Alleged Defect was directed to consumers at large;

9

4.      AHM's omission of the existence of the Alleged Defect was materially misleading; and

5.      AHM's failure to disclose the Alleged Defect caused Watson's and every New York Class Member's injury.

**Claim 8:** North Carolina Unfair and Deceptive Trade Practices Act:

1.      Hensley's and the North Carolina Class Members' vehicles contained the Alleged Defect;

2.      AHM failed to disclose the existence of the Alleged Defect;

3.      AHM's omission was part of a business activity;

4.      AHM's omission was uniformly made to Hensley and the North Carolina Class Members;

5.      AHM's omission possessed the tendency or capacity to mislead a reasonable consumer;

6.      AHM had a duty to disclosed the Alleged Defect to Hensley and the North Carolina Class Members; and

7.      AHM's omission of the Alleged Defect proximately caused Hensley's and the North Carolina Class Members' harm.

**Claim 9:** New Jersey Consumer Fraud Act:

1.      Every New Jersey Class Vehicle had the Alleged Defect;

2.      AHM had actual knowledge of the Alleged Defect at the time of the first sale or lease of any New Jersey Class Vehicle;

3.      AHM knowingly concealed or omitted an important and significant fact;

4.      With the intent that others would rely on the facts as communicated without having the opportunity to also consider the concealed or omitted facts;

5.      In connection with the sale or lease of the Class Vehicles.

**Claim 10:** Arizona Consumer Fraud Act:

1.      AHM concealed or omitted a material fact;

2.      AHM intended that others rely on that concealment or omission;

10

3.    AHM made this concealment or omission in connection with the sale or advertisement of the Class Vehicles; and

4.    Morse, and every Arizona Class Member, actually relied on AHM's concealment or omission of a material fact in purchasing the Class Vehicle; and

5.    Morse, and every Arizona Class Member, suffered damages.

**Claim 11:** Iowa Consumer Frauds Act:

1.    AHM knowingly omitted the existence of the Alleged Defect;

2.    AHM omitted the existence of the Alleged Defect with the intent that Fain and the Iowa Class Members would rely upon AHM's omission;

3.    The Alleged Defect is a material fact;

4.    AHM's omission of the Alleged Defect caused substantial, unavoidable injury to Fain and the Iowa Class Members;

5.    The substantial, unavoidable injury to Fain and the Iowa Class Members is not outweighed by any consumer or competitive benefits produced by AHM's failure to disclose the Alleged Defect.

(c)    In brief, the key evidence Plaintiffs plan to rely on for each of the claims is:

**Claim 1:**  Plaintiffs' key evidence in support of their California implied warranty claim includes, but is not limited to: (1) Plaintiffs' testimony and documents, as well as Honda documents, regarding Plaintiffs' vehicle purchases; (2) documents from Honda and its supplier and witness testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (3) expert testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (4) Plaintiffs' testimony and documents regarding their experiences with the CMBS defect in their vehicles; and (5) expert testimony establishing damages suffered by Plaintiffs and the California Class.

**Claim 2:** Plaintiffs' key evidence in support of their Ohio implied warranty claim includes, but is not limited to: (1) Plaintiffs' testimony and documents, as well as Honda documents, regarding Plaintiffs' vehicle purchase; (2) documents from Honda and its supplier and witness testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (3) expert testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (4) Plaintiffs' testimony and documents regarding their experiences with the CMBS defect in their vehicles; and (5) expert testimony establishing damages suffered by Plaintiff Liem and the Ohio Class.

**Claim 3:** Plaintiffs' key evidence in support of their Ohio negligent design claim includes, but is not limited to: (1) Plaintiffs' testimony and documents, as well as Honda documents, regarding Plaintiffs' vehicle purchases; (2) documents from Honda and its supplier and witness testimony establishing the existence and severity of the CMBS defect in all Class Vehicles, Honda's presale knowledge of the defect, and Honda's failure to disclose the defect to the Ohio Class; (3) documents and testimony regarding Honda's failures during the design and testing of the CMBS; (4) expert testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (5) Plaintiffs' testimony and documents regarding their experiences with the CMBS defect in their vehicles; and (6) expert testimony establishing damages suffered by Plaintiff Liem and the Ohio Class.

**Claim 4:** Plaintiffs' key evidence in support of their New Jersey implied warranty claim includes, but is not limited to: (1) Plaintiffs' testimony and documents, as well as Honda documents, regarding Plaintiffs' vehicle purchases; (2) documents from Honda and its supplier and witness testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (3) expert testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (4) Plaintiffs' testimony and documents regarding their experiences with the CMBS defect in their

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

vehicles; and (5) expert testimony establishing damages suffered by Plaintiff McGrath and the New Jersey Class.

**Claim 5:** Plaintiffs' key evidence in support of their CLRA claim includes, but is not limited to: (1) Plaintiffs' testimony and documents, as well as Honda documents, regarding Plaintiffs' vehicle purchases; (2) documents from Honda and its supplier and witness testimony establishing the existence and severity of the CMBS defect in all Class Vehicles, Honda's presale knowledge of the defect, and Honda's failure to disclose the defect to the California Class; (3) documents and testimony suggesting Honda took steps to conceal the defect from consumers; (4) expert testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (5) Plaintiffs' testimony and documents regarding their experiences with the CMBS defect in their vehicles; and (6) expert testimony establishing damages suffered by Plaintiffs and the California Class.

**Claim 6:** Plaintiffs' key evidence in support of their FDUTPA claim includes, but is not limited to: (1) Plaintiffs' testimony and documents, as well as Honda documents, regarding Plaintiffs' vehicle purchases; (2) documents from Honda and its supplier and witness testimony establishing the existence and severity of the CMBS defect in all Class Vehicles, Honda's presale knowledge of the defect, and Honda's failure to disclose the defect to the Florida Class; (3) expert testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (4) Plaintiffs' testimony and documents regarding their experiences with the CMBS defect in their vehicles; and (5) expert testimony establishing damages suffered by Plaintiff Adams and the Florida Class.

**Claim 7:** Plaintiffs' key evidence in support of their New York GBL claim includes, but is not limited to: (1) Plaintiffs' testimony and documents, as well as Honda documents, regarding Plaintiffs' vehicle purchases; (2) documents from Honda and its supplier and witness testimony establishing the existence and severity of the CMBS defect in all Class Vehicles, Honda's presale knowledge of the defect, and

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

Honda's failure to disclose the defect to the New York Class; (3) expert testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (4) Plaintiffs' testimony and documents regarding their experiences with the CMBS defect in their vehicles; and (5) expert testimony establishing damages suffered by Plaintiff Watson and the New York Class.

**Claim 8:** Plaintiffs' key evidence in support of their NCUDTPA claim includes, but is not limited to: (1) Plaintiffs' testimony and documents, as well as Honda documents, regarding Plaintiffs' vehicle purchases; (2) documents from Honda and its supplier and witness testimony establishing the existence and severity of the CMBS defect in all Class Vehicles, Honda's presale knowledge of the defect, and Honda's failure to disclose the defect to the North Carolina Class; (3) expert testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (4) Plaintiffs' testimony and documents regarding their experiences with the CMBS defect in their vehicles; and (5) expert testimony establishing damages suffered by Plaintiffs and the North Carolina Class.

**Claim 9:** Plaintiffs' key evidence in support of their New Jersey CFA claim includes, but is not limited to: (1) Plaintiffs' testimony and documents, as well as Honda documents, regarding Plaintiffs' vehicle purchases; (2) documents from Honda and its supplier and witness testimony establishing the existence and severity of the CMBS defect in all Class Vehicles, Honda's presale knowledge of the defect, and Honda's failure to disclose the defect to the New Jersey Class; (3) documents and testimony suggesting Honda took steps to conceal the defect from consumers; (4) expert testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (5) Plaintiffs' testimony and documents regarding their experiences with the CMBS defect in their vehicles; and (6) expert testimony establishing damages suffered by Plaintiff McGrath and the New Jersey Class.

**Claim 10:** Plaintiffs' key evidence in support of their Arizona Consumer Fraud Act claim includes, but is not limited to: (1) Plaintiffs' testimony and documents, as

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

well as Honda documents, regarding Plaintiffs' vehicle purchases; (2) documents from Honda and its supplier and witness testimony establishing the existence and severity of the CMBS defect in all Class Vehicles, Honda's presale knowledge of the defect, and Honda's failure to disclose the defect to the Arizona Class; (3) documents and testimony suggesting Honda took steps to conceal the defect from consumers; (4) expert testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (5) Plaintiffs' testimony and documents regarding their experiences with the CMBS defect in their vehicles; and (6) expert testimony establishing damages suffered by Plaintiff Morse and the Arizona Class.

**Claim 11:** Plaintiffs' key evidence in support of their Iowa Consumer Frauds Act claim includes, but is not limited to: (1) Plaintiffs' testimony and documents, as well as Honda documents, regarding Plaintiffs' vehicle purchases; (2) documents from Honda and its supplier and witness testimony establishing the existence and severity of the CMBS defect in all Class Vehicles, Honda's presale knowledge of the defect, and Honda's failure to disclose the defect to the Iowa Class; (3) documents and testimony suggesting Honda took steps to conceal the defect from consumers; (4) expert testimony establishing the existence and severity of the CMBS defect in all Class Vehicles; (5) Plaintiffs' testimony and documents regarding their experiences with the CMBS defect in their vehicles; and (6) expert testimony establishing damages suffered by Plaintiff Fain and the Iowa Class.

**Defendant:**

    (a)    Defendant plans to pursue the following affirmative defenses:

- **Defense 1:** Lack of Standing
- **Defense 2:** Third-Party Harm
- **Defense 3:** Song-Beverly Durational Limits
- **Defense 4:** Statute of Limitations
- **Defense 5:** Failure to Mitigate Damages
- **Defense 6:** State of the Art

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

- **Defense 7:** Compliance with Governmental or Industry Standards

    (b)    The elements required to establish Defendant's affirmative defenses are:

<u>Defendant's Statement of Required Elements</u>

**Defense 1:** Lack of Standing

Because standing is a jurisdictional prerequisite, the burden ultimately falls on the plaintiff, but a defendant asserting this affirmative defense identifies the absence of one or more essential standing elements. To establish the defense, the defendant shows:

1. The plaintiff did not suffer an injury in fact that is concrete, particularized, and actual or imminent; or

2. Any alleged injury is not fairly traceable to the defendant's conduct; or

3. The alleged injury is not likely to be redressed by a favorable court decision; or

4. For absent class members, the claimed theory of economic injury does not apply because they did not personally retain or suffer the alleged overpayment or other asserted harm.

**Defense 2:** Third-Party Harm.

A defendant must demonstrate a non-party's independent actions, omissions, or decisions constitute the actual and proximate cause of the plaintiff's alleged injury or loss. To establish this defense, the defendant shows:

1. A third party—separate from the defendant—engaged in conduct that was wrongful, negligent, or otherwise the operative cause of the alleged harm; or the third party's conduct was an intervening or superseding cause that breaks the causal chain between the defendant and the claimed injury.

**Defense 3**: Song-Beverly Durational Limits

The defendant must demonstrate the alleged nonconformity or defect did not

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

manifest within the statutory duration of the implied warranty. Under California Civil Code § 1791.1(c), the implied warranty of merchantability lasts only for the shorter of (1) one year from the date of delivery of the product to the consumer, or (2) the express warranty period. To establish this defense, the defendant shows:

1. The product was delivered to the consumer on a specific, identifiable date; and

2. The implied warranty of merchantability therefore lasted no longer than one year from the date of delivery, unless the express warranty period was shorter; and

3. The alleged defect, nonconformity, hard-braking event, or related malfunction did not occur, was not reported, did not materially manifest, and was not capable of being discovered within the one-year implied warranty period; and

4. Plaintiffs' claims seek relief for alleged defects that manifested only after the expiration of the § 1791.1(c) durational period, and therefore fall outside the scope of the implied warranty as a matter of law.

**Defense 4**: Statute-of-Limitations

The defendant must demonstrate the plaintiff's claims were filed after the expiration of the applicable statutory period. To establish this defense, the defendant shows:

1. An identifiable statutory limitations period applies to the specific claims asserted by the plaintiff, as established by the governing state or federal law; and

2. The date on which the plaintiff's claim accrued—typically when the alleged injury occurred or when the plaintiff discovered, or reasonably should have discovered, the facts constituting the claim; and

3. The plaintiff filed the action after the running of the applicable limitations period, measured from the accrual date; and

4. No tolling doctrine applies to extend or suspend the limitations period under

17

the circumstances.

**Defense 5**: Failure to Mitigate Damages

A defendant must demonstrate the plaintiff did not take reasonable steps to avoid or reduce the damages allegedly suffered. Plaintiff may not recover damages that could have been avoided through reasonable mitigation efforts, and any recoverable damages must be reduced accordingly.

**Defense 6**: State of the Art

The defendant must demonstrate that, at the time the product was designed, manufactured, or sold, the product conformed to the best scientific, technical, and safety knowledge reasonably available to the industry. This defense operates as an avoidance: even assuming plaintiffs proved the elements of their claims, the defendant is not liable because no safer or superior alternative design, technology, or method was known, knowable, or reasonably feasible at the relevant time.

**Defense 7**: Compliance with Governmental or Industry Standards

The defendant must demonstrate that, at the time of design, manufacture, and sale, the vehicles met or exceeded the relevant federal, state, and recognized industry standards governing safety, performance, design, or technology. This defense functions as an avoidance: even if plaintiffs prove the elements of their claims, the defendant is not liable if the product complied with authoritative standards that define minimum safety and performance requirements.

Plaintiffs' Statement of Required Elements

**Defense 1:** Lack of Standing.

Honda contends that some or all of the claims in Plaintiffs' Third Amended Complaint, including claims made on behalf of the Classes, are barred because Plaintiffs or Class members lack Article III or statutory standing. Plaintiffs maintain that proving their claims, including that Class members overpaid for their Class Vehicles, will also establish that all Plaintiffs and Class members suffered an injury in

1    fact for standing purposes.

2    **Defense 2:** Third-Party Harm.

3        Honda contends that the claims of Plaintiffs or Class members are barred, in

4 whole or in part, to the extent any injury sustained by Plaintiffs or Class members

5 was proximately or actually caused by the acts or omissions of Plaintiffs or third

6 parties. Plaintiffs are unaware of any evidence supporting this defense.

7    **Defense 3:** Song-Beverly Durational Limits.

8        The durational limit for breach of implied warranty under the Song-Beverly

9 Act sets a timeframe during which the implied warranty may be breached, not a

10 deadline to bring a claim which is controlled by the four year statute of limitations

11 for warranties set forth in the Commercial Code. *Mexia v. Rinker Boat Co, Inc.*, 174

12 Cal. App. 4th 1297, 1304-06 (2009). The durational limit is irrelevant here because

13 Plaintiffs allege that the Class Vehicles possess a latent CMBS defect that resulted in

14 injury to all Class members at the point of sale.  That is when the implied warranty

15 was breached, well before any durational limit could have expired. Honda's attempt

16 to graft a manifestation requirement onto Plaintiffs' Song-Beverly claim is contrary

17 to controlling authority.  *Id*. at 1308 ("[defendant's] argument ignores the distinction

18 between unmerchantability caused by a latent defect and the subsequent discovery of

19 the defect; the fact that the alleged defect resulted in destructive corrosion two years

20 after the sale of the boat does not necessarily mean that the defect did not exist at the

21 time of sale."); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 880 (N.D. Cal. 2018)

22 ("California appellate courts . . . have held that this durational limit does not create a

23 deadline for discovering latent defects or for giving notice to the seller. Rather, in the

24 case of a latent defect, a product is rendered unmerchantable, and the warranty of

25 merchantability is breached, by the existence of the unseen defect, not by its

26 subsequent discovery." (cleaned up)). *See also Daniel v. Ford Motor Co.*, 806 F.3d 1217,

27 1222-23 (9th Cir. 2015) (Section 1701.1 "does not create a deadline for discovering

28 latent defects") (quoting *Mexia*, 174 Cal. App. 4th at 1301).

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

**Defense 4:** Statute of Limitations.

Honda contends that the claims of some Plaintiffs and Class Members in Arizona, California, Iowa, New York, and Ohio are barred by the statute of limitations. Plaintiffs plan to object to this affirmative defense when the parties file jury instruction proposals on February 9. In particular, Plaintiffs object that there is no colorable argument that any claims are barred under a statute of limitations in California or New York.

In California, there is no possible statute of limitations issue for Plaintiffs' claims. Plaintiffs' implied-warranty claim has a four-year statute of limitations, and no Class member could have purchased a Class Vehicle (which were first sold in December 2016) more than four years before the October 2, 2020, filing of the consolidated amended complaint. Plaintiffs' CLRA claim has a three-year statute of limitations, but Plaintiffs first brought those claims in the *Villanueva* and *Fain* complaints no later than April 2019. *See Villanueva v. Am. Honda Motor Co., Inc.*, No. 2:19-cv-01390, ECF No. 1 (C.D. Cal. Feb. 25, 2019); *Fain v. Am. Honda Motor Co., Inc.*, No. 2:19-cv-02945, ECF No. 1 (C.D. Cal. Apr. 16, 2019).

In New York, there is no possible statute of limitations defense as to any member of the New York Class. As to Accords, no Class member could have purchased an Accord more than three years before the filing of the consolidated amended complaint. As to CR-Vs, Plaintiffs' claims were tolled as a matter of law during the pendency of nationwide claims against Honda for the conduct at issue in this litigation, and it is mathematically impossible for the three-year limitations period to have run before Plaintiffs filed the consolidated amended complaint.

To prove its statute of limitations defense for the remaining claims, Honda must prove, by a preponderance of the evidence:

- Arizona: Before October 2, 2019, Arizona Class members discovered, or with reasonable diligence could have discovered, that Honda concealed or omitted a material fact about Class Vehicles.

- Iowa: Before October 2, 2018,[2] Iowa Class Members discovered, or with reasonable diligence should have discovered, that Honda engaged in a deceptive practice or concealed or omitted a material fact about Class Vehicles.
- Ohio: Before October 2, 2018,[3] Ohio Class members discovered, or with reasonable diligence should have discovered, that a defect existed in Class Vehicles.

**Defense 5:** Failure to Mitigate Damages.

Honda contends that the claims of Plaintiffs and Class Members are barred, in whole or in part, to the extent that they failed to mitigate damages or caused some or all of the alleged damage. Plaintiffs plan to object to this affirmative defense when the parties file jury instruction proposals on February 9. The inapplicability of this defense is also the subject of Plaintiffs' concurrently filed motion in limine. If Honda is permitted to assert a failure to mitigate defense over Plaintiffs' objections, Honda must prove, by a preponderance of the evidence:

1. That Plaintiffs failed to us reasonable efforts to mitigate damages; and
2. The amount by which damages would have been mitigated.

**Defense 6**: State of the Art.

Honda contends that the Class Vehicles conform to the then-existing current state of the art and are not unreasonably dangerous. Plaintiffs believe this defense should be excluded as a matter of law because it is irrelevant to Plaintiffs' claims, and

---

[2] An earlier date applies to Iowa Class members who purchased CR-Vs due to cross-jurisdictional tolling, which is a legal question for the Court and not a factual one for the jury. *See Fain v. Am. Honda Motor Co., Inc.*, No. 2:19-cv-02945, ECF No. 1 ¶¶ 52, 89-94 (C.D. Cal. Apr. 16, 2019) (alleging Iowa Consumer Frauds Act claim on behalf of CR-V purchasers).

[3] An earlier date applies to Ohio Class members who purchased CR-Vs due to cross-jurisdictional tolling, which is a legal question for the Court and not a factual one for the jury. *See Cadena v. Am. Honda Motor Co., Inc.*, No. 2:18-cv-04007, ECF No. 1 ¶¶ 1, 68 (C.D. Cal. May 14, 2018) (alleging nationwide claims on behalf of CR-V purchasers).

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

1  Plaintiffs plan to object to this affirmative defense when the parties file jury
2  instruction proposals on February 9.

3  **Defense 7**: Compliance with Governmental or Industry Standards.

4        Honda contends that the Class Vehicles conform to any then-existing
5  applicable governmental or industry standards. Plaintiffs are unaware of any
6  evidence supporting this defense and further believe this defense should be excluded
7  as a matter of law; they plan to object to this affirmative defense when the parties file
8  jury instruction proposals on February 9.

9        (c)    In brief, the key evidence Defendant relies on for each affirmative
10  defense is:

11  **Defense 1:** Key evidence may include, but not be limited to: (1) vehicle diagnostic
12  data, service records, and warranty history showing no reported false-positive
13  braking events, engineering logs indicating the system performed within expected
14  design parameters, and/or absence of repair requests, complaints, or documented
15  manifestations of the alleged defect; (2) technical evidence showing that any
16  perceived braking events were triggered by environmental or driver-specific factors,
17  expert analysis demonstrating that plaintiffs cannot identify the object allegedly
18  misrecognized or whether the system misclassified anything at all, and/or evidence
19  that any braking event was within system design tolerances or consistent with
20  expected ADAS behavior; (3) Plaintiff purchase and resale records showing no
21  diminution in value attributable to the alleged defect, testimony or documents
22  demonstrating plaintiffs received the full benefit of their bargain, including safe and
23  functioning vehicles, and evidence that secondary-market valuations did not reflect
24  any defect-related discounts;(4) data showing absent class members never
25  experienced the alleged defect nor have any proof of harm, and evidence of post-
26  purchase resale transactions demonstrating that any theoretical overpayment was
27  passed on and no injury was retained.

28  **Defense 2**: Key evidence may include, but not be limited to: (1) environmental or

roadway conditions triggering appropriate system responses; driver inputs or behaviors that independently caused deceleration or unsafe situations; aftermarket accessories, damage, or modifications obstructing or misaligning sensors; and third-party repair, calibration, or servicing errors affecting ADAS performance; (2) additional proof may show Honda had no control over these third-party actions, including customer-selected repair shops or independent alterations, as well as independent advice, incorrect explanations after servicing or inspections, negligent inspections or repairs, improper calibrations, mis-installation or mishandling of vehicle components or deceptive or negligent statements made for the repair shop's and/or dealership's own purposes.

**Defense 3:** Key evidence may include, but not be limited to: (1) documents establishing the delivery date and one-year warranty period; service records and inspection reports showing no ADAS or braking complaints during that year; vehicle data logs reflecting no relevant events; and repair orders demonstrating the alleged defect was first reported well after the one-year mark; (2) additional evidence—such as expert testimony, lack of diagnostic trouble codes, and normal vehicle use— supports that the vehicle was merchantable throughout the implied-warranty period.

**Defense 4:** Key evidence may include, but not be limited to: (1) identification of the correct limitations periods for each claim and documents establishing when plaintiffs bought and received their vehicles, when any alleged defect first appeared, and when plaintiffs reasonably should have discovered the issue; (2) service records and complaint histories showing delayed reporting; (3) evidence that plaintiffs were on inquiry notice based on prior service visits, ADAS-related complaints, disclosures, owner's-manual explanations of normal AEB behavior, or continued vehicle use after braking events without raising concerns; (4) evidence negating tolling, including lack of misrepresentation, concealment, or conduct by Honda that could have prevented timely filing, and proof that plaintiffs had sufficient information to sue earlier; (5) chronologies comparing accrual dates to filing dates, demonstrating that

claims were filed years after plaintiffs first knew—or reasonably should have known—of the alleged issues.

**Defense 5:** Key evidence may include, but not be limited to: (1) records showing long delays between alleged hard-braking events and service visits, continued normal vehicle use, and missed or declined diagnostic appointments; (2) evidence of plaintiffs ignoring available inspections, repairs, and software updates; (3) telemetry and testimony indicating Plaintiffs continued driving in conditions they believed triggered the issue, mileage records reflecting extensive use despite claimed safety concerns; (4) Plaintiffs failing to follow instructions regarding maintenance, sensor care, and responses to warnings; (5) not mitigating economic damages—such as by failing to obtain free warranty inspections or trading in the vehicle—and in some cases making choices that increased their claimed losses.

**Defense 6**: Key evidence may include, but not be limited to: (1) engineering design specifications demonstrating that Honda's AEB system followed accepted methodologies for detection, object classification, and threat assessment at the time; (2) internal technical reports confirming that Honda's system architecture and sensor fusion approach were consistent with contemporary industry practices; technical evidence demonstrating the limitations of radar, camera, and sensor fusion technologies available during the relevant model years; (3) testimony establishing that the detection and classification capabilities alleged by Plaintiffs were not achievable with the state of scientific knowledge at the time; and (4) industry-wide publications or benchmarking analyses showing that no OEM had solved the precise technical challenges plaintiffs allege Honda should have overcome.

**Defense 7**: Key evidence may include, but not be limited to: (1) engineering analyses demonstrating that the Alleged Defect is inconsistent with the system's verified compliance with FMVSS and industry standards; (2) records showing plaintiffs' proposed alternative designs were not required by any governmental or industry standard at the time; (3) testimony confirming that plaintiffs' expectations exceed the

24

performance levels recognized by regulators and industry bodies during the relevant design period; (4) field data, warranty records, and quality monitoring showing no systemic issues indicating non-compliance with regulatory standards.

8.     In view of the admitted facts and the elements required to establish the Plaintiffs' claims and Defendants' affirmative defenses, the following issues remain to be tried: a) whether Plaintiffs can prove their claims set forth above; b) whether Honda can prove its affirmative defenses set forth above; c) whether Honda owes Plaintiffs and Class members compensatory damages; d) whether Honda owes Plaintiffs and Class members punitive damages; and e) whether Honda is liable for the reasonable attorney fees of counsel for Plaintiffs and Class members.

9.     All discovery is complete.

10.     All disclosures under Fed. R. Civ. P. 26(a)(3) have been made. The joint exhibit list of the parties has been filed under separate cover as required by L.R. 16-6.1.  Plaintiffs' objections to Defendant's Exhibits, and the grounds therefor, are set forth in Attachment A. Defendant's objections to Plaintiffs' Exhibits, and the grounds therefor, are set forth in Attachment B.

11.     Witness lists of the parties have been filed with the Court.

Only the witnesses identified in the lists will be permitted to testify (other than solely for impeachment).

Each party intending to present evidence by way of deposition testimony will mark such depositions in accordance with L.R. 16-2.7. For this purpose, the following depositions shall be lodged with the Clerk as required by L.R. 32-1:

(1)     Fain, Larry;

(2)     Crane, Dave;

(3)     Do, David;

(4)     Elton, Douglas;

| | | |
|---|---|---|
| (5) | Henry, Joseph; |
| (6) | Jarosz, Stephen; |
| (7) | Montgomery, Christopher; |
| (8) | Morgan, Gregory; |
| (9) | Robenstine, Kyle; |
| (10) | Ruger, Norm; |
| (11) | Robert Bosch GmbH. |

Larry Fain's testimony will be presented by deposition due to a serious medical condition that prevents him from traveling and for which the 92-year-old is receiving ongoing treatment.

12. The following law and motion matters and motions in limine, and no others, are pending or contemplated:

Plaintiffs filed motions in limine to exclude all evidence, testimony, and argument regarding:

(1) the amount that any Plaintiff or Class member received or was offered for the re-sale of a Class Vehicle; and

(2) the merits of automatic emergency braking systems generally.

Defendant filed motions in limine to exclude all evidence, testimony, and argument regarding:

(1) Plaintiffs' opinions about whether their Class Vehicles should have braked;

(2) customer complaints concerning unwanted braking in the Class Vehicles made to Honda, Honda-authorized dealers or the National Highway Traffic Safety Administration ("NHTSA");

(3) NHTSA's investigation of unwanted braking in Class Vehicles;

(4) recalls, investigations, and Technical Service Bulletins regarding non-Class Vehicles; and

26

(5)   a survey Honda of America Manufacturing, Inc. sent to its
managers concerning braking in Honda vehicles and related
communications and documents.

Defendant contemplates filing a motion to request bifurcation under Rule 42
so that statute-of-limitations issues are tried first, separate from the merits. Defendant
also contemplates filing a motion to narrow and/or exclude certain class members.
Defendant further contemplates moving for judgment as a matter of law at the close
of Plaintiffs' case because Plaintiffs cannot meet their classwide burden of proving
the elements of their claims as to themselves and each Class Member.

13.   Bifurcation of the following issues for trial is ordered:

(a)   Plaintiffs' position:

There is no basis to bifurcate trial of the statute of limitations defense, as
requested by Honda, because the defense relates to a minority of Class members, at
best, and overlaps significantly with the merits.  Bifurcation would therefore not
promote efficiency or serve any other purpose.

Although Honda asserts a statute of limitations defense relative to claims
brought on behalf of Class members from five of the eight states (Arizona, Iowa,
Ohio, California and New York), there is no colorable limitations defense to the
claims under California and New York law.  *See* Section 7, *supra*.  Thus, at best,
Honda's statute of limitations defense could dispose of the claims of some Class
members from three of the eight states involved.

Moreover, the statute of limitation defenses that Honda raises are part of the
entire story that should be put before the jury at one time.  Plaintiffs will present
evidence that Honda actively concealed the CMBS defect and denies it to this day,
often blaming customers for not understanding how their vehicles are designed to
operate.  Honda has the burden of showing that Class members were on notice of
their claims as of a specific date, including *what* exactly Class members knew, and

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

*how* that information would have alerted them to the existence of a systemic CMBS defect.  Regardless of which party prevails, one thing is clear: these matters—what Class members knew when, the nature of the defect of which they were allegedly on notice and so forth—are inextricably tied up with the merits.

Where, as here, there will be significant overlap in the evidence regarding Honda's limitations defense and Plaintiffs' case-in-chief, a request for bifurcation should be denied. *See Acosta v. Ethicon, Inc.*, 2021 WL 6104868 at* 1 (C.D. Cal. Dec. 13, 2021) ("It appears there will be significant overlap in evidence between the two proposed trials, given that the statute of limitations defense is premised on the idea that Plaintiffs should have been aware of the product's possible defectiveness sooner.") *See also Masimo Corp. v. Apple*. 2022 WL 2177451 at* (C.D. Cal. Feb. 17, 2022) (denying motion to bifurcate because there are sufficient overlapping issues even where the defendant may have to present inconsistent theories); *Enborg v. Ethicon*, 2022 WL 1122618 at * 3 (E.D. Cal. Apr. 14, 2022) (denying motion to bifurcate because, among other things,  the issue of whether plaintiffs' awareness of the defect would overlap with other parts of the case).

Nor does the authority cited by Honda below support bifurcation here. *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004) addressed the issue of whether the same jury could hear contract damages and liability for punitive damages for the same contract and upheld the District Court's decision not to bifurcate.  This decision merely enforces the Court's discretion to handle any potential issues with appropriate jury instructions.  The same can be done here.  In *Grisham v. Philip Morris, Inc.*, 2009 WL 9102320, at *2-3 (C.D. Cal. Dec. 3, 2009) and the authorities cited therein (most of which are out of Circuit), the limitations question was distinct from the merits and would have resolved the matter altogether.  That is not the case here.

Courts in this District have also acknowledged that juries should be provided with a complete view of the claims.  *See, e.g.*, *Dunivin v. County of Riverside*, 2024 WL

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

3468785, at * 4 (C.D. Cal. June 14, 2024) (denying motion to bifurcate even where plaintiff argued that the presentation regarding damages may affect jury's decision on liability).

(b)     Defendants' position: AHM requests bifurcation under Rule 42(b) so the jury decides AHM's statute-of-limitations defenses before hearing the merits. This case proceeds on multiple state-law causes of action with differing limitations periods and accrual frameworks. Timeliness will depend on individualized facts such as purchase/delivery dates, when any alleged injury or loss occurred, and for certain claims when a purchaser discovered or reasonably could have discovered the alleged basis for suit. Trying those issues alongside defect, knowledge, materiality, causation, and damages would substantially increase jury confusion and risk that merits evidence improperly influences timeliness determinations. A separate limitations phase will streamline trial, promote efficiency, and may materially narrow the claims and class members at issue. *See Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1021 (9th Cir. 2004). Courts have recognized that it is not uncommon to try statute-of-limitations defenses separately and have noted that district courts have 'routinely applied Rule 42(b) to bifurcate trial on statute of limitations issues, and courts of appeal have routinely affirmed such bifurcation.' *Grisham v. Philip Morris, Inc.*, 2009 WL 9102320, at *4 (C.D. Cal. Dec. 3, 2009) (collecting cases); *see also* Wright & Miller, *Federal Practice & Proced.*, § 2389 & n.29 ("In appropriate cases a separate trial also may be ordered of any of the affirmative defenses provided for in Rule 8(c) . . . such as . . . statute of limitations[.]") AHM proposes the following two-phase structure under Rule 42(b). Phase I should be limited to AHM's statute-of-limitations defenses, including limitations periods, accrual, and predicate facts relevant to any asserted tolling or delayed-discovery arguments. Phase II—only if necessary—should address liability and damages only for claims and class members found timely after Phase I and after the Court applies any governing tolling doctrines to the jury's predicate findings. Fed. R. Civ. P. 42(b). AHM will expand upon the

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

reasons for bifurcation in a noticed motion to the Court.

14.    The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Conference Order shall supersede the pleadings and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA

DATED: _____

_____
UNITED STATES DISTRICT JUDGE

Approved as to form and content.

*/s/ Amy M. Zeman*_____
GIBBS MURA LLP

*/s/ Mark S. Greenstone*_____
GREENSTONE LAW APC

*Class Counsel*

*/s/ Michael L. Mallow*_____
SHOOK HARDY & BACON

*Counsel for Defendant*

## **ATTESTATION**

I, Amy M. Zeman, am the ECF user whose identification and password as being used to file this document. In compliance with Local Rule 5-4.3.4(a)(2)(i), I hereby attest that each of the Signatories herein, including Counsel for Defendant, concur in this filing.

DATED:    February 9, 2026         */s/ Amy M. Zeman*_____

[PROPOSED] FINAL PRETRIAL CONFERENCE ORDER
CASE NO. 2:18-CV-04007-MWF-MAA